## S. W. MORRISON AND OTHERS, APPELLANTS, *v.* CAREY-LOMBARD COMPANY, RESPONDENT.

STATUTORY CONSTRUCTION.—REPUGNANT PROVISIONS.—Where one construction of a statute will permit all its provisions to stand in force, and another construction renders certain parts thereof nugatory, the first construction should be adopted.

MECHANIC'S LIEN.—CONTRACTOR.—SUB-CONTRACTOR.—The mechanic's lien law provides for a lien for contractors and for sub-contractors, to. begin with and relate back from the time of filing thereof, to the date of the beginning to do work or to furnish material. Another section provides that any sub-contractor may file a notice of intention to claim a lien before such sub-contractor begins to work or furnish material, and the lien for work done or material furnished thereafter shall relate back to the date of filing such notice; *held:* 1. All liens of sub-contractors exist *without any prior filing of notice to hold a lien for work to be done, provided,* such lien be followed up within statutory time by filing lien after the work is done, and the priority among lien-holders in such case is determined by date of beginning work. 2. If the sub-contractor files a notice of intention to claim a lien for work to be done, his lien attaches without any filing of lien subsequent to the

completion of the work, and relates back to the date of his notice. 3. The privilege of filing a notice of intention to claim a lien for work to be done, can be waived by the sub-contractor and he may proceed in the same manner as the contractor proceeds to hold a lien, and *semble* that any payment by the owner to his principal contractor made after the sub-contractor has filed his notice prior to doing work, or if no notice is filed, after the beginning to do work or furnish materials, will not release the lien of the sub-contractor.

APPEAL from a judgment of the district court of the third district. Hon. Charles S. Zane, judge. The opinion states the facts, but the following section of the statute may be of interest:

Sec. 15. "Upon the filing of the firstly described statement and service of a copy thereof upon the owner, or upon the filing of the secondly described statement and service of a copy thereof upon the owner by any such sub-contractor, the payment to the contractor of so much money as is claimed to be due or to become due in any such statement for such work or materials, and such money as the stated probable value of such work or materials, shall be deemed to be enjoined in the hands of the owner, and it shall be his duty to hold the same, whether then due or thereafter to become due to the contractor, for the benefit of the party claiming under such statement, until the right of the party so claiming to receive the amount claimed if the same be contested, shall have been legally adjudged or until such lien shall have been ended by expiration of time or shall have been otherwise satisfied."

Sec. 16. "Any such claim of any sub-contractor that shall be established under this act, by the judgment or decree of court shall, to the full amount thereof, be a valid set-off in favor of such owner and against the contractor, but in no event shall claims of sub-contractors adjudged to be due as aforesaid and costs of adjudication

be a lien upon the property to any greater extent than the indebtedness of said owner to the contractor. In case of sub-contractors in the second degree, no such claims of such last-named sub-contractors, so adjudged to be due shall be a lien upon the property to any greater extent than the indebtedness of the original contractor to the sub-contractor in the first degree; but in said last-named case, no payment made by the contractor to the sub-contractor in the first degree, after the filing of either of said statements, shall affect the amount of the lien of the sub-contractor in the second degree."

Do not these sections show that the owner is at liberty to continue paying the contractor until the statement of lien, if no notice prior to doing work is given by the sub-contractor, is filed by such sub-contractor? Hence the attorneys for the parties rightly conceded that the owner could be held only for the amount due when the liens were filed. Is not the notice to be given by the sub-contractor before he begins work the only way in which he can protect himself against payments by the owner to the contractor?

*Teahen* v. *Nelson,* 6 Utah 363, 23 Pac. Rep. 764 was decided under the lien-law prior to the act of 1890.

*Mr. Frank B. Stephens,* and *Messrs. Baldwin and Tatlock,* for the appellants.

The intention of the legislature in the mechanics' lien-law was to give sub-contractors an opportunity to make themselves safe for labor or materials furnished or to be furnished by filing with the county recorder one of two notices. One of his intention to do work or furnish material stating its probable value, the other that he has done work or furnished material, and that from the time such notice was given the sub-contractor should have a lien to the

extent that the owner then owed the contractor, but subject to any other lien then recorded against the property.

*Messrs. Bowman and Zipf,* for the respondent.

Bartch, J.:

The owner of a lot in Salt Lake City made a contract with a builder to erect a residence thereon, and the appellants and respondent were all sub-contractors in the first degree under the principal contractor. They all furnished material for use in the erection of the building, and, upon the principal contractor's failure to pay in full therefor, filed notices of mechanic's lien against the property. Suit was brought by these parties, and the cause was tried in the third district court on an agreed statement of facts. On an accounting between the owner of the property and the principal contractor it was ascertained that there was due the contractor the sum of $2,290, and by agreement of the appellants and respondent the owner's property was released of the liens upon his payment of that sum into court. The property of the owner having been released, the principal question to be determined is the right of priority to the fund paid into court as between the sub-contractors. The facts agreed upon between the several parties, sub-contractors, are, in substance, that the amounts due from the principal contractor to Spencer, Bywater & Co. is $442.30, to Morrison, Merrill & Co., $200, and to the Carey-Lombard Company, $4,396; that the several parties filed and had recorded against the property mechanics' liens, respectively, December 22, 1890, November 15, 1890, and September 17, 1891; that the same parties commenced to furnish materials, respectively, on July 1, 1890, July 15, 1890, and on May 5, 1890; that they are sub-contractors of the first degree; and that all the liens were filed for record within 40 days from the date of furnishing the last material. Upon this statement

of facts the trial court entered judgment against the principal contractor for the several amounts above stated and in favor of the sub-contractors, and, as to the sum paid into court, entered judgment in favor of the Carey-Lombard Company. From this judgment the appellants appealed to this court.

The sole question raised is as to whether the lien of each of the several claimants attaches on the date of filing the notice for record, or whether it attaches on the date of furnishing the first material. Section 1 of the act approved March 12, 1890, (Sess. Laws Utah 1890, p. 25, c. 30,) provides "that whoever shall do work or furnish materials by contract, express or implied, with the owner of any land, to any amount, for the construction, enlargement, alteration, or repair of any building or other structure upon such land, or in making any other improvements, or in doing any other work upon such land, as stated in the following sections, shall have a lien upon such land, building, structure, and other improvement' for the amount and value of the work so done, or materials so furnished, to the extent of the interest or claim of such owner thereto at the time of the commencement to do such work or to furnish such materials. Said lien shall likewise attach to another or greater interest in any of such property acquired by such owner at any time subsequent to such commencement to do work or to furnish materials, and before the establishment of said lien by process of law," etc. From this section it would appear that the legislature intended to. limit the lien to such persons as had either express or implied contracts with the owner of the land, and that such persons should have a lien for such materials or work to the extent of the owner's interest or claim in the property "at the time of the commencement to do such work or furnish such materials," and such lien is extended to any other or greater interest which the owner

may acquire in the property thereafter, and before the lien is established by process of law.     This is an express provision for such a lien for those who have a contract directly with the owner of the land, and is binding upon him, and defines what interest is subject to the lien; so that, after the contractor commences to perform his contract, the owner cannot convey his land free from the incumbrance, nor can he impose any other burdens upon it to in any manner affect the lien.     From the day the contractor commences to work or furnish material it is notice to all persons thereafter contracting with the owner that the property is burdened with a lien, and, if there were no further enactment, then there could be no question about the notice or the time of the attachment of the lien, nor of the persons entitled thereto.

But section 2 of the same act provides: "Whoever shall do work or furnish materials by contract, express or implied, with the principal contractor mentioned in the preceding section to any amount, for any of the purposes mentioned in the preceding section, shall be deemed a sub-contractor in the first degree, and shall have a lien upon any and all such property, in like manner as said contractor."     This is a provision for the sub-contractor, and it defines his status to be precisely the same as that of the contractor mentioned in the first section.     The appellants and respondent herein are subcontractors of the first degree, and their rights are subject to the provisions of this section.     The next section provides for sub-contractors in the second degree, and then follow other sections, which define the classes of property which are subject to lien, and the persons who may avail themselves of the law in regard to liens.     Then follows section 10, which provides: "Any party claiming a lien shall file in the office of the recorder of the county wherein said land is situated a statement containing—first, a notice of

intention to hold and claim a lien; second, a description of the property to be charged therewith; third, an abstract of indebtedness, showing the whole amount of debt, the whole amount of credit, and the balance due or to become due to the claimant, which abstract of indebtedness shall be verified," etc.    Every person claiming a lien must file the statement as provided in this section.    This is indispensable to preserve the lien provided for in the preceding sections, and section 11 provides that this statement shall be filed within 60 days in case of the principal contractor, and within 40 days in case of a sub-contractor in either degree, "after the time when the last work shall have been done or the last material shall have been furnished." It is evident that the filing of the statement does not create the lien, for the language of the statute is, "Any party claiming a lien shall file," etc., but simply holds it or keeps it in force for the time of one year, as provided in section 21 of the same act, so as to give the claimant an opportunity to enforce the same by process of law.  It follows that when the principal contractor, or a sub-contractor in either degree, has done work or furnished material, and then filed the statement provided for in section 10 in the manner provided in section 11, his lien is complete, and superior to every incumbrance with which the property may have been burdened subsequent to the date of commencing to do such work or to furnish such material, and may be enforced within the time above mentioned.

Counsel for appellants contend that such lien does not attach until the date of filing the statement and notice, and that, in order for the lien to attach at the time of commencing to do work or to furnish material, it is necessary for the claimant to file a statement as provided in section 12, which reads as follows:  "Any sub-contractor of either degree who shall intend to do work or to furnish

material for which such lien is given, may file in the office
of the recorder of such county wherein said land is situated
a statement containing—first, a notice of intention to hold
and claim a lien; second, a description of the property to
be charged therewith; third, the probable value of the work
to be done, and the probable value of the materials to be
furnished, as near as may be. Said statement may be filed
before he begins to do such work or to furnish such ma-
terials. Likewise he may file such statement at any time
after he begins to do such work or to furnish such materials,
and before the completion of his undertaking under the
contract. From the time he shall have filed such statement
he shall have a lien for such work thereafter done by him,
or for such materials thereafter furnished by him not
exceeding the sum stated as the probable value thereof.
In case any such party claiming a lien shall have done
work or furnished materials before the filing of such state-
ment, he may include in such statement a statement of
the value, or probable value, of the work already done and
materials furnished, as near as may be, for which said last-
named values, to the extent of the sum mentioned, said
lien shall likewise attach," etc.

This section is limited to sub-contractors in either degree,
and simply provides an additional safeguard if they choose
to avail themselves of it. If a person enters into a con-
tract with a contractor of a higher degree to do work or
to furnish materials, and does not engage to enter upon
the performance of it until at some future day, he may file
this statement, and from the time he does file it "he shall
have a lien for such work thereafter done or for such
materials thereafter furnished by him, not exceeding the
sum stated as the probable value thereof." The effect of
this is to protect him against, and to give him priority
over, any other sub-contractors who might commence to do
work or to furnish materials between the date of his making

the contract and the date of his entering upon the performance of it, and no lien can attach in favor of any claimant until he files this statement or begins to work or to furnish materials. Counsel for appellant contend that the word "may," in the expression "may file in the office," etc., should be construed "shall." If this theory were correct, then the effect would be that no lien of a sub-contractor would attach until the statement provided for in this section were filed. This might, and in many cases doubtless would, render nugatory the provision in the first section of the act that the claimant shall have a lien "to the extent of the interest or claim of such owner thereto at the time of the commencement to do such work or to furnish such materials," in so far as sub-contractors are concerned, and would place them in a less favorable position than the principal contractor, whose rights are not disturbed by section 12. Under such an interpretation the owner might at any time before the filing of the statement convey or mortgage or otherwise incumber the interest which he had in the property at the time such contractor commenced to perform his contract. This would also be in derogation of the provision of section 2, and would render the provisions of the first two sections repugnant to those of section 12, giving no effect to the former, which would be contrary to the rule of construction that, where an act is susceptible of two constructions, and one gives effect to all of its provisions and the other does not, the one giving effect should be adopted.

It is evident, from a careful consideration of the law in question, that the legislature intended to augment, rather than abridge, the rights of the laborer. The conclusion is that the word "may" was used in its ordinary sense, and that the provision of section 12 is permissive, and not mandatory. The claimant may avail himself of it or not, as he chooses. If he does not, it will in no way interfere

with his lien, which attaches when he commences to do work or to furnish material. If he does file the statement, he is limited in his recovery to the sum specified therein. The last sentence in section 12, above quoted, to the effect that the sub-contractor may file the statement at any time after he has done work or furnished materials, is also permissive, and the claimant may avail himself of it or not, at his pleasure. The intent of the legislature becomes more apparent by an examination of section 19 of the same act, which reads as follows: "All such liens shall relate back to the time of the commencement to do work or to furnish materials, and shall have priority over any and every lien or incumbrance subsequently intervening, or which may have been created prior thereto, but which was not then recorded, and of which the lienor under this act had no notice. Nothing herein contained shall be construed as impairing any valid incumbrance upon any such land duly made and recorded before such work was commenced, or the first of such materials were furnished," etc. This section provides in express terms that all such liens shall attach at the time the performance of the contract commenced; and again it provides that valid incumbrances upon such land, made and recorded before that time, shall not be impaired, thus clearly indicating that no act which the owner may thereafter do shall injuriously affect the lien of the claimant on the property.

Those above mentioned appear to be all the sections which are material to the determination of the question raised in this case. While casual reading may develop some doubt as to the effect which ought to be given to their several provisions, yet more deliberate consideration has a tendency to point out the real intention of the legislature in enacting this law. Such intention cannot be ascertained by a consideration of the several sections separately. The whole act must be construed together,

and, if possible, effect be given to every part of it. It is
evident from a deliberate consideration of the whole act
that the legislature intended to have the lien of sub-
contractors attach on the date of their commencing to do
work or to furnish materials. The owner must be presumed
to observe the presence of the sub-contractors and others
on his property when they commence to labor or to furnish
materials. The law requires him to recognize their claim
in the order of the priority of their liens, and he cannot
treat any payment made to the principal contractor, after
work has been commenced or materials furnished by sub-
contractors, as an offset to the claims of the lienors. He
may make such payment without their consent, but it will
be at his peril. After the work is completed or the
materials are furnished the lien may be lost by a failure
to file the statement provided in section 10 within the
time allowed in section 11, or by a failure to foreclose
within the time as limited in this act; but, unless there is
such failure, or a payment of the claim, the property
will be burdened with the lien, subject to prior incum-
brances with which the property was burdened when the
performance of the contract was commenced, or when the
statement under section 12 was filed. Phil. Mech. Liens,
§§ 225, 228; *Teahen* v. *Nelson,* 6 Utah, 363, 23 Pac. Rep.
764; *Mellor* v. *Valentine,* 3 Colo. 255; *Monroe* v. *West,* 12
Iowa, 119; *Tritch* v. *Norton,* 10 Colo. 337, 15 Pac. Rep.
680. In this case the liens were abandoned by agreement
of the parties, so far as the owner of the property was
concerned, upon his paying into court the sum found to
be due from him to the principal contractor. Neither of
the parties had filed a statement under section 12, but
each of them had filed one under section 10. We think
the trial court correctly decided that the Carey-Lombard
Company, who first entered upon the performance of its
contract, had a superior lien, and was entitled to have the

money so paid into court applied towards the payment of its claim. The judgment is affirmed.

MINER, J., concurred in the result.