THE CARY-LOMBARD LUMBER COMPANY, A COR-PORATION, RESPONDENT, v. THOMAS W. PART-RIDGE, APPELLANT.

1. MECHANICS' LIENS,—ASSIGNABLE INTEREST.— OWNER.—One in possession of land under a contract of purchase, is an owner within the meaning of the law relative to mechanics' liens, Session Laws 1890, p. 24, § 1, which provides that any person having an assignable, transferable, or conveyable interest, shall be deemed an owner.

2. ID.—LIEN STATEMENT.— ABANDONMENT OF CONTRACT BEFORE COMPLETION BY CONTRACTOR.—PAYMENTS MADE AT OWNER'S RISK.—Session Laws 1890, chapter 30, relative to mechanics' liens, section 10 provides that any party claiming a lien may perfect it after having done the work or furnished the

material, by filing a verified lien statement. Section 12 provides that sub-contractors of either degree may file a notice of intention to hold and claim a lien before doing any work or furnishing any material. Section 15 provides that upon filing and serving either the statement described in section 10 or in section 12, the money due or to become due the contractor shall be deemed to be enjoined in the hands of the owner. Section 16 provides that the adjudicated claims of sub-contractors shall not be a lien upon the property to any greater extent than the indebtedness of the owner to the contractor. Section 19 provides that all such liens shall relate back to the time of commencement to do work or to furnish material. The principal contractor abandoned the work before completing the building, having been paid in full by the owner for the work done up to the date of abandonment. The payments were made, however, by the owner after the plaintiff had begun to furnish material, but before the lien statement had been filed as provided for in section 10 (no statement having been filed under section 12). The owner absorbed the balance of the contract-price in completing the contract himself. *Held, First,* that the payments made by the owner to the principal contractor after the plaintiff had begun to furnish material, were paid at his risk and peril. *Second,* that the effect of the provisions of section 12 is to protect the sub-contractor and give him priority over other sub-contractors who might commence to do work or furnish material between the date of his contract and the date of his entering upon the performance of it.

3. STATUTORY CONSTRUCTION.— REPUGNANT PROVISIONS.— Where the provisions of a statute are repugnant, or where they are susceptible of two constructions, one of which gives effect to all of its provisions and one which does not, that construction will be adopted which permits all its provisions to stand in force.

(No. 495.   Decided July 27, 1894.   37 P. R. 573.)

APPEAL from the District Court of the Third Judicial District, Hon. George W. Bartch, *Judge.*

Action by the Cary-Lombard Lumber Company against Charles Sheets and Thomas W. Partridge to foreclose a

mechanic's lien.    From a judgment for plaintiff, defend-
ants appeal.    *Affirmed.*    The opinion states the facts ex-
cept that no notice of intention to hold and claim a lien
before furnishing any material had been served or filed by
the plaintiff under § 12, Session Laws 1890, ch. 30.    Also
it may be added that section 15 of the act provides that
upon filing and serving either of the statements described
in sections 10 and 12 of the act, the money due or to
become due the contractor shall be deemed to be enjoined
in the hands of the owner, and section 16 provides that
in no event shall the claims of sub-contractors be a lien
upon the property to any greater extent than the indebt-
edness of the owner to the contractor.

*Mr. S. P. Armstrong* and *Mr. C. O. Whittemore,* for
appellant.

The owner is clearly not liable on account of any part
of the contract price which he had in his hands when the
contractor abandoned the work and when plaintiff's notice
of lien was filed, because all this amount (and more) was
required to complete his house.    2 Jones on Liens, §
1512, *et seq.; Larkin* v. *McMullin,* 120 N. Y. 206–9; *Wig-
gins* v. *Bridge,* 70 Cal. 437–8; *Lind* v. *Braender,* 7 N.
Y. Supp. 664; *Culver* v. *Elwell,* 73 Ill. 536–40.    The
contract provided that in case the contractor abandoned
the work, that the owner might complete the house and
deduct the expense therefor from the contract price.    Re-
spondent being a sub-contractor was bound to take notice
of the provisions of the contract and is bound by its
terms.    Phillips Mech. Liens, §§ 58, 62, 62*b,* 206; *Schroe-
der* v. *Garland,* 134 Pa. St. 283, *et seq.; Henly* v. *Wads-
worth,* 38 Cal. 361.    Where the contractor abandons the
work and is fully paid for what he has done, no lien of
sub-contractor lies.    Overton on Liens, § 564; *Schultz* v.
*Hay,* 62 Ill. 157; *Hollister* v. *Watt,* 29 N. E. R. 1103.

Where the owner makes payments according to the terms of his contract before notice is received, he is exonerated to the extent of such payments from the liability of claims of sub-contractors unless the contrary is provided by statute. Phillips Mech. Liens, § 626; *Stewart* v. *Wright*, 52 Ia. 335-7; *Renton* v. *Conly*, 49 Cal. 188; *Craig* v. *Smith*, 37 N. J. L. 549; *Wells* v. *Walters*, 17 Ind. 534. Statutes giving new liens create new rights and obligations and must be construed strictly as against the lien claimant. *Coddington* v. *Dry Dock Co.*, 31 N. J. L. 479; *Wright* v. *Phols*, 53 N. W. R. 849; Suth. Stat. Con. §§ 398, 458; Phillips Mech. Liens, § 206. The respondent stood by without giving any notice of his claim, while the owner paid out more than the full amount of the contract price, and all in accordance with the provisions and terms of his contract with the contractor. In justice, ought he to pay. more? *Lind* v. *Braender*, *supra; Culver* v. *Elwell*, *supra; Ferguson* v. *Bank*, 4 E. D. Smith, 760; *Allen* v. *Corman*, 1 E. D. Smith, 692; *Gillan* v. *Hubbard*, 2 Hilt. 303.

*Mr. J. M. Bowman*, for respondent.

MINER, J.:

In this case it appears that the appellant Partridge, having a contract interest in land belonging to one Elmira Shearman, contracted with Charles Sheets, the contractor, by which Sheets was to furnish material and build a house upon the premises, for which Sheets was to receive $2,200, in certain payments, as the building progressed. Elmira Shearman held the legal title to the land, and Partridge was in possession under contract of purchase. Elmira Shearman furnished Partridge $2,200, with which to build the house, and, when paid for, Partridge was to receive the legal title. The findings of fact by the referee show

that Partridge had an equitable interest in the land. Sheets commenced the work June 9, 1890, and continued the work of furnishing material for completing the house up to July 19, 1890, and then ceased to do any more work or furnish any more material, without the fault of Partridge. The plaintiff, from time to time, from June 9 to July 12, 1890, furnished Sheets with building material with which to construct the house, for which Sheets agreed to pay plaintiff the sum of $934, but actually paid only the sum of $408.21, leaving unpaid to plaintiff $525.79, which sum was still due plaintiff at the time he filed and served his lien, July 29, 1890. Partridge had paid Sheets, according to the contract, as the building progressed, the sum of $1,496.75, before July 29, 1890, and before the filing and serving the notice of mechanic's lien on Partridge. On July 29th there was unexpended upon the house, under the contract, the sum of $706.25, and Sheets still owed plaintiff for lumber $525.79. Partridge then completed the house, necessarily expending thereon $722.79, or about $16.50 in excess of the contract price.

The court, on motion, set aside the conclusions of law by the referee, and entered a decree that plaintiff had a lien against the property for the sum of $646.52, due and owing plaintiff from Sheets, and ordered sale of the property to satisfy the decree. This decree and judgment are appealed from, and error is assigned in the refusal of the court to affirm the report of the referee, and in setting aside the conclusion of law found by the referee, and in granting the decree, under the facts found. We deem it unnecessary to discuss any of the assignments of error except the last. The questions presented are whether or not Partridge was the owner or had such an interest in the property as would authorize a mechanic's lien to attach to it; and, second, when, if at all, such lien should attach, so as to affect the rights of the owner who had

made full payment to the contractor before the lien was filed.

Under section 1, p. 24, Sess. Laws 1890, "whoever shall do work or furnish materials by contract, express or implied, with the owner of any land, to any amount, for the construction, * * * of any building * * * shall have a lien thereon * * * for the amount and value of the work so done, or material so furnished to the extent of the interest or claims of such owner thereto at the time of the commencement to do such work or to furnish such materials. Said lien shall likewise attach to another or greater interest in any of such property acquired by such owner at any time subsequent to such commencement to do work or to furnish materials and before the establishment of said lien by process of law, * * * any person having an assignable, transferable or conveyable interest or claim in or to any land, building, structure, or other property mentioned in this act, shall be deemed an owner." Under the findings of fact, Mr. Partridge had an equitable interest in the premises. He had contracted with Sheets to build the house for him. Mrs. Shearman had furnished him $2,200 with which to build the house on this land, and when Partridge had paid for the land he was, by contract, to receive the legal title to it. He was in possession when the contract was made, and had the supervision of the building. Such being the case, he must be held to have had an assignable, transferable, or conveyable interest and claim to the land and premises, sufficient to be the owner, within the meaning of the statute. Such lien under the statute may also be extended to any other or greater interest which such owner may acquire to such property thereafter, and before the lien is established by process of law. *Morrison* v. *Carey-Lombard Co.*, 9 Utah, 70, 33 Pac. 238; Sess. Laws 1890, p. 25, § 2. Under Sess. Laws 1890, p. 29, § 19, "all such liens

shall relate back to the time of the commencement to do work or to furnish materials, and shall have priority over any and every lien or incumbrance subsequently intervening, or which may have been created prior thereto, but which was not then recorded, and of which the lienor under this act had no notice."

It will be seen that, under the findings of fact, Sheets performed the labor and furnished the material between the 9th of June and the 19th of July, 1890, and that the plaintiff commenced furnishing material for the building June 9, and continued to furnish such material until July 12, 1890. The plaintiff's lien was filed July 29, or within 17 days from the date of the last material furnished. This brings the act of filing the lien within the 40 days limited by sections 10 and 11, p. 26, Sess. Laws 1890. Under these statutes, from the day the sub-contractor or material man commences to furnish material, it is notice to the owner, and to all other persons thereafter contracting with the owner, that the property is burdened with a lien, and no previous notice is required to be given the owner than the fact of the delivery of the material for the construction of the building. Such lien relates back to the time of the furnishing materials, and under section 2, referred to, the sub-contractor has a lien upon any and all such property in like manner as said principal contractor under section 1 of the act. Sections 1 and 2 refer to those persons who shall do work, while section 12 refers to that class of persons who shall intend to do work or intend to furnish materials at some future day. If one enters into a contract with another of a higher degree, to do work or furnish materials at some future day, he may, under section 12 of this statute, file this statement; and from the time he files it "he shall have a lien for such work thereafter done by him, or for such materials thereafter furnished by him not exceeding the sum stated

or the probable value thereof," and such sum shall in no case "be a lien upon the property to any greater extent than the indebtedness of said owner to the contractor." Section 16.

The effect of these provisions is to protect him against, and to give him priority over, any other sub-contractors who might commence to do work or to furnish materials between the date of his contract and the date of his entering upon the performance of it; and no lien can attach in favor of any such claimant until he files this statement, or begins to work or to furnish materials. Any other construction of these provisions of the statute would render sections 1 and 2 repugnant to section 12, and give no effect to the former, as applied to sub-contractors, which would be contrary to the proper rule of construction,—that when an act is susceptible of two constructions, and one gives effect to all its provisions and the other does not, the one giving effect to all should be adopted. These questions were carefully and ably considered by Mr. Justice Bartch in the case of *Morrison* v. *Carey-Lombard Co.*, 9 Utah, 70, 33 Pac. 238, and were referred to in *Teahen* v. *Nelson*, 6 Utah, 363, 23 Pac. 764, to which reference may be had.

We are of the opinion that the lien of the plaintiff attached at the time the first materials were furnished the contractor; that Partridge, the owner, was bound to take notice of such lien, and any payments made by him to the contractor after such lien attached must be held to have been made at his risk and peril. Upon the whole case, we find no error. The judgment of the district court is affirmed, with costs.

MERRITT, C. J., and SMITH, J., concur.