SEWARD H. FIELDS, Trustee, and BANK OF COM-
MERCE, a Corporation, Appellants, v. THE DAISY
GOLD MINING COMPANY, a Corporation, A. T.
MOON, Receiver, and the SALT LAKE HARDWARE
COMPANY, a Corporation, et al., Respondents.

No. 1364.   (69 Pac. 528.)

1. **Materialman's Lien: Time of Accrual: Running Account: Relation Back: Intervening Trust Deed: Priority.**
Revised Statutes 1898, section 2000, makes a trust deed notice to
lienholders from the time it is filed for record.  Section 1372
provides for a materialman's lien,  which, by section 1381, is
made to apply to those furnishing materials for the working,
etc., of mines.  Section 1384 provides that the materialman's
lien shall be prior to any mortgage of which the lienholder had
no notice, and which was unrecorded when he commenced to
furnish the material; and section 1385 provides that such lien
shall relate back to and take effect as of the time when the
lienor commenced to furnish materials, and shall have priority
over any incumbrance subsequently intervening except a lien of
the same class or one which may have been created prior  thereto
and not recorded but of which the  materialman had  actual
notice at the time.   *Held*, that the lien for materials commenced
to be furnished to a mining company prior to the execution and
recording of a mortgage on the company's property, and con-
tinuing to be furnished, under a contract creating a continu-
ous running account, until some time after the recording of the
mortgage, took effect from the date when the first and continued
until the last materials were furnished, with priority over the
intervening trust deed.[1]

3. **Same.**
When all the items of  a materialman's account relate to one con-
tinuous transaction between the same parties, and their deal-
ings indicate an expectation to continue such business relations,

[1] Culmer v. Caine, 22 Utah 216, 61 Pac. 1008; Morrison v. Carey-
Lombard Co., 9 Utah 70, 33 Pac. 238; Lumber Co. v. Partridge, 10 Utah
322, 37 Pac. 572.

the account will be regarded as continuous and running, and dates from the first item thereof, though the goods are furnished on separate orders at different dates, and there were intervening irregular payments on monthly balances in the account. But where the materials are furnished for separate and distinct purposes, under separate contracts or orders requiring cash payments, under circumstances tending to rebut any presumption of a continuous dealing, the lien for the material dates, in the absence of an express contract to the contrary, from the date when the materials were commenced to be furnished on the respective contracts or orders.

2. **Appeal: Bill of Exceptions: Sufficiency of Evidence Presumed.**

Where a bill of exceptions does not purport to contain the substance of all the evidence produced at the trial, it will be presumed on appeal that there was sufficient proof to support the findings and decision.[2]

BASKIN, J., dissenting.

(Decided July 5, 1902.)

Appeal from the Third District Court, Tooele County.— *Hon. A. N. Cherry,* Judge.

Action by Seward H. Fields, Trustee, and the Bank of Commerce, to foreclose a trust deed executed by the Daisy Gold Mining Company. The Salt Lake Hardware Company also commenced a suit against the mining company for the purpose of foreclosing its mechanic's lien. The hardware company appeared in the action commenced by Fields and the bank, and answered, and set forth its claim under the mechanic's lien by way of cross-complaint. The two cases were consolidated and tried together. From a decree awarding the hardware company a prior lien, the plaintiffs appealed.

AFFIRMED.

_____

[2] Mining Co. v. Gisborn, 21 Utah 73, 59 Pac. 518; Cochrane v. Bussche, 7 Utah 233, 26 Pac. 294; Culmer v. Caine, 22 Utah 216-224, 61 Pac. 1088; Snyder v. Emerson, 19 Utah 319, 321, 57 Pac. 300.

*Messrs. Pierce, Critchlow & Barrette* for appellants.

By section 2000, Revised Statutes 1898, the trust deed became notice to all persons including lienholders from the time it was filed with the recorder. As we have seen the last order and sale was on the ninth day of December, 1899, the trust deed was recorded on the thirteenth and the next order and sale was on the eighteenth of December, or five days after the trust deed became notice to all the world of its contents. We thus see that if these orders or sales constituted separate transactions then the order and sale of the eighteenth certainly was after the trust deed took effect.

But we are not without authority that transactions such as described in this case constitute separate and independent transactions, and can not be tacked together for the purpose of claiming priorities under the mechanic's lien law. "Where materials are furnished in carload lots, under separate orders, each delivery and order constitutes a separate transaction." Heltzell v. Railroad Co., 77 Mo. 315; Phillips v. Duncan, Am. Law Reg. 304.

In the absence of a contract under which goods or labor are to be furnished continuously, all payments apply to the oldest items, and when these are paid and the indebtedness therefore cancelled, they are no longer existing, and can not be referred to or considered as existing for the purpose of fixing a date to which the lien will relate.

*C. C. Dey, Esq., W. H. Bramel, Esq.,* and *C. W. L. Stevens, Esq.,* for respondent Salt Lake Hardware Company.

The bill of exceptions in this case does not purport to contain all the evidence upon the subject, or all the evidence upon the question involved, or all the evidence material to that question, or any other question, so that the finding of the court stands unimpeached; the presumption being that there

was competent evidence to sustain the findings of the court. Cochrane v. Bussche, 7 Utah 233; Culmer v. Caine, 22 Utah 216; 2 Ency. Pl. and Pr., p. 441.

The case of Helena Steam Heating and Supply Co. v. Wells (Mont.), 40 Pac. 78, 79, and cases cited, thus lays down the rule: "We think the proper rule to be, and the one supported by ample authority, that when all the items in the account relate to one transaction, and is between the same parties, it constitutes a continuous account, regardless of different times of delivery, and dates from the day of the last item." Fidelity Ins. Co. v. Roanoke Iron Co., 81 Fed. 450-1; Cary Hardware Co. v. McCarty, 50 Pac. 750, and cases cited; 15 Am. and Eng. Ency. of Law (1 Ed.), 74, and cases cited; Patten v. Matter, 52 N. E. 173; 2 Jones on Liens, secs. 1435, 1436, and cases cited; Lamb v. Hanneman, 40 Iowa 41; Phillips on Mechanics Liens, p. 566; O'Leary v. Burns, 53 Miss. 171; Fulton Iron Works v. North C. C. M. & S. Co., 80 Mo. 265.

Payments and settlements do not break the running account into parts. Craddock v. Dwight, 85 Mich. 587; Lamb v. Hanneman, 40 Iowa 41; Cox v. R. R. Co., 44 Cal. 18; Malone v. Big Flat G. M. Co., 76 Cal. 578, 586.

### STATEMENT OF FACTS.

In May, 1899, the Daisy Gold Mining Company, a corporation organized under the laws of Nebraska, was the owner and engaged in developing and working its mine in Tooele county, Utah. About this time it commenced to forward orders to the Salt Lake Hardware Company for goods, supplies, machinery, and tools with which to work and operate its mine and mill. These orders were filled several times each month. The goods shipped were accompanied by an invoice, and monthly accounts were rendered to the mine at the end of each month, which included the items of all goods

shipped and payments made during the month previous. These orders for material were continued, as needed, several times during each month until the spring of 1900, and payments were made on the accounts rendered at irregular periods. The account in question commenced November 1, 1899, and ended February 8, 1900. According to the account presented in the record, the mine was indebted to the hardware company for such goods as follows: July 31, 1899, $2,381.20; October 31, 1899, $827.99; November 30, 1899, $79.90; December 31, 1899, less payments made, $1,110.90; January 3, 1900, $1,327.24. Prior to February 9, 1900, more goods were sold and delivered in like manner. On December 18, 1900, there was due the hardware company for principal and interest on such account $2,107.94. On December 5, 1899, the Daisy Gold Mining Company was indebted to the plaintiff, Bank of Commerce, for borrowed money, in the sum of $15,000, and on the same day it borrowed from several other parties interested with the Bank of Commerce the sum of $10,000 in addition, and executed its trust deed to Seward H. Fields, as trustee for the bank and others, to secure the payment of said collective indebtedness, amounting to the sum of $25,000, and the trust deed was duly recorded on the thirteenth day of December, 1899. The money arising from said $10,000 notes so borrowed and secured was used by the mining company with which to pay its debts, and the sum of $1,097.76 was paid to the hardware company January 29, 1900, from such money so borrowed, secured by such deed of trust. The intention of the bank and trustee was to pay off all the debts of the mining company with the money so borrowed, so that the deed of trust would be the first lien on the mining property, but the hardware company had no notice of such intention, or of the source of payment of said sum to them. On the twenty-eighth day of February, 1900, the Salt Lake Hardware Company filed its lien upon the Daisy Gold Mining Company, claiming said

sum of $2,007.24, with interest, for goods and materials sold and delivered to the mine from November 1, 1899, to the eighth day of February, 1900. Payment on the trust deed being in default, Fields, the trustee, and the Bank of Commerce, on February 28, 1900, brought this action to foreclose the lien created by the trust deed, impleading the Salt Lake Hardware Company, the Daisy Gold Mining Company, and A. T. Moon, as receiver, and others, as defendants. The Salt Lake Hardware Company commenced suit against the mining company for the purpose of foreclosing its mechanic's lien. The hardware company appeared in the action commenced by Fields and the bank, and answered, and set forth its claim under the mechanic's lien by way of cross-complaint, which was also answered. These two cases, being at issue, were tried together, and the determination of one will also determine the other.

As between the Salt Lake Hardware Company and the trustee, the priority of the lien was given over to the hardware company, and it was directed by the decree that the hardware company should be first paid the amount of its claim, fixed at the sum of $2,007.24, with interest from December 18, 1900; and that Fields, trustee, should next be paid the amount of his claim under his trust deed, amounting to $27,797.40, with interest. The mine was sold upon the decree, the hardware company's claim was paid in full from the proceeds of sale, and Fields and the bank received $20,041.86, leaving a deficiency of over $10,000 still due Fields and the bank on the trust deed. Fields and the bank appeal from the decree and order, claiming that the court erred in awarding the hardware company a prior lien to that of Fields and the bank under the trust deed. The appellants claim, in substance, that the lien of the hardware company should not relate back to any earlier date than December 31, 1899, because the goods were furnished under numerous complete independent contracts or orders of sale, and that the account of sale made was not con-

25 Utah—6

tinuous in its nature, and at about that time, if the credits were properly kept, nearly all of its entire bill was paid when the trust deed was recorded on December 13, 1899, and that the Salt Lake Hardware Company should not be allowed to go back of the date of the last item in its account that should be considered paid by the last credit without reference to monthly rests, and that the law should apply the payments in the order in which the bills were contracted, paying the oldest bills first, regardless of the continued accounts. The court found that the materials furnished by the Salt Lake Hardware Company were furnished for the purpose of working, developing, and preserving the Daisy Gold Mining Company's mine, and that the latter was indebted to the Salt Lake Hardware Company in the sum of $2,007.24, with interest, for such materials so furnished upon a continuous running account, the first of such materials having been furnished on the first day of November, 1899, and the last on the eighth day of February, 1900, and gave the hardware company a lien prior to the deed which was recorded December 13, 1899, because the goods were commenced to be furnished on a continuous running account November 1, preceding the recording of the trust deed, and that goods were thereafter continued to be furnished to February 8, 1900, which were never paid for.

MINER, C. J., after stating the facts, delivered the opinion of the court.

The testimony tends to show, as the court found, that the goods were ordered by the mining company as needed from time to time, and were furnished upon a continuous, open, running account. Each order for materials did not constitute a complete transaction of itself, but rather a series of continuous transactions, showing a connected, continuous course of dealing, which created an extended debt and credit account, upon which payments were made

from time to time without any stipulated agreement as to the time of payment, but with an invoice accompanying each bill delivered, followed by a monthly statement of the account at the commencement of each month showing the condition of the account at that date. By section 2000, Revised Statutes 1898, a trust deed becomes notice to lienholders from the time it is filed for record. Under section 1372, Id., materialmen are given liens for materials furnished. Section 1381 provides that: "The provisions of this chapter shall apply to all persons who shall do work or furnish materials for the working, preservation, or development of any mine, lode, mining claim, or deposit yielding metals or minerals of any kind, or for the working, preservation, or development of any such mine, lode, or deposit in search of such metals or minerals, and to all persons who shall do work or furnish materials upon any shaft, tunnel, incline, adit, drift, drain or other excavation of any such mine, lode or deposit." Section 1384 provides that: "The liens provided for herein are preferred to any lien, mortgage, or other incumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance of which the lienholder had no notice and which was unrecorded at the time the building, improvement, or structure was commenced, work done, or materials commenced to be furnished." Section 1385 provides that: "The liens herein provided shall relate back to and take effect as of the time of the commencement to do work upon and furnish materials on the ground for the structure or improvement, and shall have priority over any lien or incumbrance subsequently intervening, except a lien herein provided for of the same class, or which may have been created prior thereto, which was not then recorded and of which the lienor under this chapter did have actual notice." Under these provisions of the statute the lien for material commenced to be

furnished to the mine on November 1, and continued to be furnished from time to time to February 8, following, related back and took effect as a contract as of the time of the commencement to furnish materials, and had priority over any subsequent lien created by the trust deed recorded on December 13, 1899. This court has frequently held, under similar statutes, that the lien has its inception from the date of the first material furnished. Culmer v. Caine, 22 Utah 216, 61 Pac. 1008; Morrison v. Carey-Lombard Co., 9 Utah 70, 33 Pac. 238; Lumber Co. v. Partridge, 10 Utah 322, 37 Pac. 572. The bill of exceptions does not purport to contain or set forth the substance of all the evidence produced at the trial. Therefore it will be presumed upon an appeal that there was sufficient proof to support the findings and decision of the trial court. Mining Co. v. Gisborn, 21 Utah 73, 59 Pac. 518; Cochrane v. Bussche, 7 Utah 233, 26 Pac. 294; Culmer v. Caine, 22 Utah 216-224, 61 Pac. 1008; Snyder v. Emerson, 19 Utah 319, 321, 57 Pac. 3400; 2 Enc. Pl. and Prac., 41.

The questions as to whether the material furnished to the mine was furnished under separate contracts, and as to whether it was furnished under a contract creating a continuous running account, were questions of fact, and were passed upon by the trial court adversely to the contention of the appellants, and we are not disposed upon this record to assume the right to question the correctness of the decision rendered. In general, we consider the proper rule to be that, when all the items in the account relate to one continuous transaction between the same parties, although the goods were delivered on separate orders, and at different dates, within short intervals of each other, and the dealings of the parties indicate an expectation to continue such business relations, the transactions constitute a continuous running account, regardless of intervening irregular monthly balances in the account, which dates from the date of the last item deliv-

ered, and relates back to the time of the first delivery of material under that course of dealing or contract shown. This presumption may be overcome and rebutted by the nature and course of dealing by the parties or by facts shown. If the materials were furnished for separate and distinct purposes, under distinct separate contracts or orders requiring cash payment under circumstances tending to rebut dealings of a continuous nature, then there would be no presumption of a continuous account, and, in the absence of an express contract, a right for a lien, if any, would date from the time of the commencement to furnish materials for the different separate contracts on each separate order. Upon this subject it is said in 2 Jones, Liens, section 1435, as follows: "If a material-man begins to furnish materials for the erection or repair of a building without any specific agreement as to the amount to be furnished, but there is a reasonable expectation that further material will be required of him, and he is afterwards called upon from time to time to furnish the same, he is generally entitled to a lien as under an entire contract. In determining a particular case the character of the account, the time within which the work was done or the materials furnished, and the purpose in doing the work or furnishing the materials afford a proper ground for the presumption either that there was or was not an understanding from the commencement that the work should be done or the materials should be furnished whenever required. If the work was done or the materials furnished for separate and distinct purposes, or under distinct contracts or orders, though in executing one and the same contract with the owner, there is no presumption of a continuous account, and the right of lien must date from the time of doing the different jobs of work or furnishing the different parcels of materials. But if there was a continuous dealing and running account, and the work was done and the materials furnished at short intervals, and were appropriate to the condi-

tion and progress of the building, a presumption arises that it was understood from the beginning that the claimants were to do the work or furnish the materials for the construction of the building as the same should be required; and in such case the last item of the account is the date from which the limitation of the time of filing of the lien is to be taken." In section 1436 it is stated that: "Where it is to be inferred from the evidence that all the articles furnished by a contractor for the construction or repair of a house or other improvement were furnished under one contract, it is immaterial that the furnishing of the articles may have extended over a long period, or that several months may have elapsed between two items of the account. Where it is specially agreed or impliedly understood between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account will be considered as one continuous account and one demand." Supply Co. v. Wells (Mont.), 40 Pac. 78; Lamb v. Hanneman, 40 Iowa 41; Kearney v. Wurdeman, 33 Mo. App. 447; Fulton Iron Works v. North Center Creek Mining & Smelting Co., 80 Mo. 265; Fidelity Insurance, Trust & Safe Deposit Co. v. Roanoke Ins. Co. (C. C.), 81 Fed. 451; Hardware Co. v. McCarty (Colo. App.), 50 Pac. 750; 15 Am. and Eng. Enc. Law (1 Ed.), 74; Phil. Mech. Liens, p. 566; O'Leary v. Burns, 53 Miss. 171. Part payment and settlement do not necessarily defeat the running nature of an account upon which a lien is filed. Craddock v. Dwight, 85 Mich. 587, 48 N. W. 644; Cox v. Railroad Co., 44 Cal. 18; Malone v. Mining Co., 76 Cal. 578, 18 Pac. 772; Nason v. Power Co. (Wash.), 49 Pac. 235; Griffin v. Seymour (Colo. App.), 63 Pac. 809. The mining company opened an account with the hardware company for materials for operating and developing its mine. It was an open account, and materials were ordered and furnished on demand, and the account could be terminated by either party at pleasure. Under the statute and decisions of this court the hard-

ware company had a lien upon the mine for the materials furnished upon the facts as found by the court. Any other construction based upon the facts found would tend to render the rights of those furnishing material and labor uncertain and insecure, and the tendency would be to unsettle the practice with reference to liens, and greatly impair and interrupt business dealings arising under the lien laws of the State.

The appeal of the receiver, A. T. Moon, was not before this court upon this hearing, because his appeal had not been perfected under the rules of this court. Both actions, which were heard together, are held determined by this decision.

The decree of the district court is affirmed, with costs.

BARTCH, J., concurs. BASKIN, J., dissents.