432 P.2d 58

Ben HARRIES, dba Carriage House
Kitchens, Plaintiff and Appellant,

v.

Bernard E. VALGARDSON, Robert J. Ehlers
and Norma Ehlers, his wife, De-
fendants and Respondents.

No. 10829.

Supreme Court of Utah.

Sept. 25, 1967.

Milo S. Marsden, Jr., Salt Lake City, for appellant.

Robert M. Anderson, Salt Lake City, for respondents.

HENRIOD, Justice:

Appeal from a summary judgment dismissing Harries' complaint for material and work furnished and used in the construction of a house. Affirmed in part and

remanded with instructions. No costs awarded.

Valgardson was the owner of the subject property. He was also the general contractor in the process of constructing a home, either for himself or for sale to some interested party in the future. When the house was about half completed, in accordance with his own plans and specifications, Valgardson and the Ehlers became signatories to an "Earnest Money Receipt and Offer to Purchase" document, in which, subject to completion of the house and performance of other conditions, Ehlers offered to purchase the house and lot, and paid Valgardson $3300 on the $35,000 purchase price. The latter, who had mortgaged the premises and incurred liability to some twenty-odd claimants, went South with the $3300 and his conscience. The mortgagee-bank foreclosed and Ehlers, obviously to protect his $3300 payment and to further protect his interests by obtaining a marketable title to the property from another source, bought the place at sheriff's sale for $32,200 which, together with the $3300 paid by Ehlers to Valgardson roughly represented the purchase price of the property, had Valgardson performed as agreed,—which he never did. As a matter of fact, he was divested of title by the foreclosure, subject to redemption which he made no effort to do.

Harries sued Ehlers under Title 14-2-1, Utah Code Annotated 1953 (the so-called contractors bond statute), alleging that the Ehlers were owners of an "interest in the land," and having failed to require from the contractor Valgardson a bond to protect materialmen, the Ehlers 1) were obliged to pay such materialmen under the provisions of the statute, for any material and/or work that went into the house; and that, even so, 2) Ehlers had an obligation to pay therefor on an implied contract basis.

■ Treating the second point first, the record indicates that Ehlers *did* ask Harries to add some fixtures to the kitchen, valued at $60 in excess of Valgardson's plans and specifications. This amount they became obliged to pay if Harries performed, and we so hold.

■ As to 1): re: the bonding statute. It is clear from the wording of the statute that "The owner of any interest in land *entering into a contract* * * * *for the construction* * * * of any building * * * upon land" shall require a bond from the *contractor* for protection of materialmen.

Assuming, arguendo, that one might claim that the Ehlers were owners of an interest in the property (which is highly doubtful under the facts of this particular case), they did not contract with Harries to do anything, except to the extent of $60, which, as we stated above, they must pay. Ehlers contracted with Valgardson, the

owner, not to construct anything particularly, but to buy a package deal consisting of a lot with a complete house situate thereon,—nothing more. The Earnest Money Receipt in this case was in no sense a conventional contract employing a contractor to construct a house for Ehlers. There were some minor changes agreed to, it is conceded, listed on a page attached to the Receipt, that hardly could be said to have altered the nature of the transaction, which was a preliminary agreement to purchase and for the sale of a house and lot, which agreement, under the facts of this particular case became virtually impossible to perform. Anyway, the Ehlers' only refuge was to attempt to acquire title from another avenue,—not Valgardson, but from someone else, which in this case was the sheriff, assisted by the foreclosure process.

We believe and hold, that under the facts of this particular case, there was no contract of employment for the construction of a house for Ehlers, but simply one looking to the sale of a house and lot, in a package.

Harries leans heavily on Cary-Lombard v. Sheets[1] to sustain his point. That case clearly is distinguishable, since the potential buyer under a similar situation was the one who employed the contractor to build the house in the first instance.

The case is remanded with instruction to try the question as to whether Harries performed his contract with Ehlers with respect to the $60 charge made. In all other respects, the case is affirmed. (Emphasis ours.)

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ.