## DAKOTA LOAN & TRUST CO. v. PARMALEE.

E., the owner of a lot and building thereon, mortgaged the same to plaintiff. Subsequently E. sold the premises, subject to such mortgage to P. & W. Afterwards P., without the knowledge or consent of the mortgagee, removed the building to another lot, owned by his wife. *Held*, that neither the severance and removal of the building nor its

annexation to another lot. destroyed the right of the mortgagee to enforce his claim against it, the lot mortgaged being first exhausted.

2.   After its removal to her lot, the wife made certain improvements upon and additions to the building. *Held*, that the improvements and additions so made in this case did not destroy the identity of the mortgaged building, or defeat the mortgagee's right to subject it to the payment of so much of his mortgage debt as remained unpaid after exhausting the mortgaged lot.

(Syllabus by the Court.   Opinion filed April 26, 1894.)

Appeal from circuit court, Marshall county. Hon. A. W. Campbell, Judge.

Action to foreclose a real estate mortgage. Judgment for plaintiff, and defendant Parmalee appeals. Affirmed.

The facts are stated in the opinion.

*James Wells*, for appellant.

Where a mortgage is gives upon real estate upon which a building is situated at the time the mortgage is given, the lien of the mortgage upon the building is extinguished by the removal of the said building from the land. Buckout v. Swift, 27 Cal. 434; Hill v. Gwin, 5D Cal. 47; Harris v. Barmore, 78 Ky. 568; Pierce v. Goddard, 39 Mass. 559; Bank v. Knaff, 22 La. Am. 117.

Fixtures when severed from the freehold, again assume the character of personal chattels, and an action in regard to them is governed by rules similar to those applicable in ordinary actions relating to personalty. When severed and carried away the proper remedy is by an action of *trespass de bonis asportatis*. Udal v. Udal, Aleyn 81; Hensly v. Brodie, 16 Ark. 511; Heaton v. Findley, 12 Penn. St. 304; Foley v. Addenbrooke, 13 Mees & W. 174; Gardner v. Findley, 19 Barb. 317. And a mortgagee may maintain the action. Burnside v. Twitchell, 43 N. H. 390.

*Weeden & Hanten*, for respondent.

The lien of a mortgage given upon real estate upon which a building is situated at the time the mortgage is given follows the building when wrongfully removed from the land. Hutch-

ins v. King, 1 Wall. 43; Partridge v. Hemenway, 50 N. W. 1084; Hamlin v. Parsons, 12 Minn. 108; Dorr v. Dudderer, 88 Ill. 107; Baker v. Terrell, 8 Minn. 195.

KELLAM, J.   This is an action to foreclose a real estate mortgage.   The only question in the case is whether the lien of the mortgage extends to a building removed from the mortgaged premises subsequently to the giving of the mortgage. The facts, being agreed upon, were adopted by the court as findings of fact, and are as follows:   In May, 1887, defendants Emmons L. Howe and Marietta, his wife, made a mortgage to respondent on lot 16, block 21, in the town of Britton, upon which there is due and unpaid about $900.   That when the mortgage was so given the mortgaged premises consisted of said lot and a dwelling house standing thereon.   That in November, 1887, the said Howe conveyed the mortgaged premises to Albert S. Parmalee, the husband of appellant, and Richard D. Wooddell.   That in August, 1888, Parmalee and Wooddell removed the dwelling house from the mortgaged premises to other lots, then vacant, belonging equitably, and subsequently legally, to appellant, Jessie D. Parmalee, wife of said Albert Parmalee.   That after the removal of said dwelling house it was "changed and remodeled throughout, newly plastered and completely finished, a new addition, 18x23 feet, built onto it, new porches built on the south and west sides of it, and the entire building placed on a stone foundation.   The changes and improvements thereon cost about $600.   That the money paid out for such improvements was the separate property of Jessie D. Parmalee, wife of A. S. Parmalee."   While there is no finding as to the consent or nonconsent of the mortgagee to the removal of the dwelling house, the case was tried below and is presented to this court upon the theory that the removal was made without the knowledge or consent, express or implied, of the mortgagee.   The mortgage, when given, was a pledge of all that then constituted the realty.   Presumably the credit ev-

idenced by the note which the mortgage secured was given on the strength, not of the lot alone, but of the improvements, which were a part of it. If respondent had known that the house was about to be removed, he could have prevented it, if such removal would have impaired his security. He could have done this on the ground that he had a lien upon it, which he had bought and paid for. If Parmalee, who occupied the place of the mortgagor, removed the house knowing that it would impair the security of the mortgage, nothing would save the transaction from being actively and operatively fraudulent against the mortgagee but the refusal of the law to allow its consummation. It is frequently difficult, under differing circumstances, to tell just when and how far the lien should follow property detached from the realty, but a case like this, where the building was removed bodily by the mortgagor himself, or one standing in his place, and charged with the payment of the mortgage debt, for the very purpose of slipping it from under a lien to which he was rightfully subject, and placing it on a lot of his own or his wife's, to increase its value without cost to them, but at the expense of another, does not draw very persuasively upon the equity resources of the court. Partridge v. Hemenway, 89 Mich. 454, 50 N. W. 1084, was a case very similar to this, except that the lot to which the building had been removed had been conveyed by the mortgagors by quit claim deed to another—one Hartwell—and the mortgage was held by an assignee instead of the mortgagee. The court said: "The case is then presented whether the *bona fide* assignee of the mortgage shall lose his lien by the removal of these buildings upon a lot, the title to which was afterwards assigned by defendant Hartwell by a quit claim deed. No one would claim, if the fact be established —which I think is established—that the complainant, or J. F. Partridge & Bro. [the mortgagees] never consented to the removal of the buildings, and that Hemenway removed them without the knowledge or consent of these parties, that the

complainant would lose his lien under the mortgage. Hemenway, the mortgagor, could not set up this claim, and Hartwell, under his quit claim deed, stands in no better position." Hamlin v. Parsons, 12 Minn. 108 (Gil. 59), was another case very like the one before us, both as to the facts and the relief sought. The court, after referring to the fact that a building may belong to one person and the land upon which it stands to another, and so that it does not necessarily follow that a building is a part of the realty to which it is attached, says: "If one person can by agreement, express or implied, be the owner of a dwelling house upon the land of another, a *fortiori*, where a building, part of A.'s realty, is removed therefrom by B., and annexed to B.'s land, or that of a third person privy thereto all without A.'s consent, it would seem that A. would not be deprived of his property in the building, either by the severance or annexation, * * * and it would make no difference except as to the extent of A.'s right, whether A was absolute owner of the premises from which the building was taken, or possessed of a conditional interest therein, as a mortgage or otherwise. Such rights as he had should not be taken away from him by robbery. We see no reason why complete relief should not be offered the mortgagee in this action. In Dorr v. Dunderer, 88 Ill. 107, it was distinctly ruled that a mortgagee might follow a building detached and removed from the mortgaged premises; the court holding that, "where a house is wrongfully removed from mortgaged premises, it may be that replevin will not lie in favor of the mortgagee for it after it has been permanently attached to other real estate; but not because the mortgagee has lost his title, or his right to recover damages for its removal, but for the sole reason that replevin is not the remedy to recover real property." The house being in transit to still another lot when this action was brought, the court held that the mortgagee might recover it in replevin. In Hoskin v. Woodward, 45 Pa. St. 42, a mortgagor had removed a fixture from the mortgaged premises and sold it to another. The

court said: ''The purchaser had both actual and constructive knowledge of the mortgage, and the morality of the law calls such purchase a fraud upon lien creditors, and void as to them. Of course, therefore, the mortgagee had a right to follow the removed property, and assert his rights over it.''

As before noticed, plaintiff, either at common law or under our statute, could have prevened by injunction the removal of the building if it imperiled his security, (2 Story, Eq. Jur. § 915; Jones, Mort. § 684; Comp. Laws, § 5448); and under some au-- thorities he might have maintained an action to recover for the severed fixtures. If, however, there should be doubt of this, because the mortgagee takes no legal title nor right of possession by his mortgage, he surely could have maintained an action against Parmalee for damages to his security; but both of these actions would rest upon the distinct ground that he (Parmalee) had deprived the plaintiff of something he had a right to, some thing he had a lien upon. It would be without justification either in morals or law to hold that Parmalee could, by an act plainly and unquestionably wrongful, and which he knew to be so, free this building from the claim and lien of the plaintiff. Buildings may be moved by ropes and pulleys, but property rights cannot be so transferred. The difficulty in maintaining the continuance of the lien in these cases arises, in my judgn ent not from the fact of separation from the realty, as taught in Buckout v. Swift, 27 Cal. 434, but from complications subse- quently occurring, making the assertion and enforcement of the lien impracticable; as when the character or identity of the fixtures severed or removed is radically changed or destroyed. The building so severed and removed may be torn down, and the material, with other, used in the construction of another and different building; or standing trees, a part of the realty, may be cut down and converted into lumber, and erected into a house. It is obvious that there must be a point beyond which the lien will not follow the detached fixtures, but the difficulty in fixing that point is no different in principle or greater in degree

from that of fixing the point at which a chattel mortgage ceases to be a lien on growing grain. It has been held that the lien survives the cutting and threshing of the grain. Does it follow the grain into the mill, and remain a lien upon the flour made from it, and upon the bread made from the flour? Of course it is not necessary to attempt to answer these questions here. They are only mentioned to illustrate the thought that the mere unauthorized change of position or possession or apparent owership does not destroy the lien. In this case there was no such substantial change in the character or identity of the severed fixtures as presents any formidable difficulty, and whatever changes were made were so made by the very parties who occupied the place of the mortgagor, and with full knowledge of plaintiff's rights and of the fact that the very building to which they were making additions and attempting to make their own was already pledged to plaintiff as security for his debt. In Buckout v. Swift, *supra*, a decision was made contrary to our judgment as above indicated. The opinion says "that by removal from the land the house was effectually removed from the operation of the mortgage lien," and that "position is the pivot of judgment." We cannot assent to this, for we all know that the realty may belong to one and the building standing upon and attached to it may, as personal property, belong to another, and that "position" does not determine whether the building is a part of the real estate or not. Referring to the doctrine enunciated in this case, Jones, in his work on mortgages (Section 453), says: "But justice would seem to demand that one purchasing what he either actually or constructively knows to be mortgaged to another shall now be allowed to shelter himself behind his wrongful act, and say that thereby the nature of the property was changed; and authority supports this position." If the doctrine of Buckout v. Swift is correct then a sheriff levying upon and thus securing a lien upon a lot and building as real estate loses his lien upon the building if the judgment debtor succeed in removing it from the

lot levied upon. To us the conclusion is commended neither by its logic nor its results. In Latham v. Blakely, 70 N. C. 368, it was held that an execution levied upon land continued a lien upon fixtures subsequently detached. See, also, Witmer's Appeal, 45 Pa. St. 462. Clark v. Rayburn, 1 Kan. 281, also cited by appellant, was replevin for a house sold from the mortgaged premises by the mortgagor. The court simply held that the mortgagee had no such title or right to the possession of the removed house as would support replevin. This accords with our own judgment. His lien upon the severed building as a part of the property mortgaged might have been perfect, and not entitle him to maintain replevin for its possession, any more than he could maintain ejectment for the land. Here the plaintiff does not seek to recover the building or its value, but simply to foreclose his mortgage, and subject what was hypothecated to him to the payment of his debt. The judgment provides that the lot shall first be sold, and then if a deficiency remain, the removed house may be sold. We think this is entirely fair to all parties. The judgment of the trial court is sound in principle and correct in detail, and it is affirmed.