# SANFORD v. KUNKEL et al. (WALSH et al., interveners.)

No. 1685.   Decided April 23, 1906 (85 Pac. 363).

1. MECHANICS' LIENS—TIME OF TAKING EFFECT—BEGINNING OF WORK.
   —Under Revised Statutes 1898, sec. 1384, providing that mechanics'
   liens are preferred to any lien, mortgage, or other incumbrance which
   may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials
   were commenced to be furnished, also to any lien, mortgage, or incumbrance of which the lienholder had no notice and which was
   unrecorded at the time the building improvement or structure was
   commenced, work done, or materials commenced to be furnished,
   a mechanic's lien filed within the time specified by section 1386
   takes effect as of the date of the commencement of the work and
   the furnishing of the materials and is prior to intervening equities.[1]

2. SAME—PROPERTY AFFECTED BY LIEN—REMOVAL OF BUILDING—EFFECT.—Revised Statutes 2898, sec. 1372, gives a mechanic's lien on
   the property on which labor is performed or for which material
   is furnished to the extent of the interest of the owner or lessee in
   the real estate.   Section 1379 declares that the lien shall extend
   to cover so much of the land whereon the building, structure, or
   improvement may be made as may be necessary for the convenient
   use and occupation of the building or improvement, and if the building shall occupy two or more lots or other subdivision of land, such
   lots shall be deemed one lot for the purposes of the lien law.   *Held,*
   that the removal of a building by third persons to land other than
   that on which it was originally erected without the knowledge and
   consent of the owner thereof, or mechanic's lienholders, did not
   relieve the building in its new location from liability·for a deficiency
   existing on the sale of the land on which the building was erected
   to satisfy such liens.

3. SAME — SALE OF BUILDING — INJURY TO FREEHOLD.—Where third
   persons. wrongfully removed a building which was subject to
   mechanic's lien, to a lot other than .on which it was originally constructed, and the building was necessary to satisfy such liens, the
   lienholders were entitled to sell and remove the building from its
   new location, or, if that could not be done without great injury to
   the building or freehold on which it stands, such freehold, including
   the building, was subject to sale with a right of redemption as in
   the case of the foreclosure of a mortgage.

BARTCH, C. J., dissenting.

---

[1] Culmer v. Caine, 22 Utah 216, 61 Pac. 1008; Fields v. Daisy Min.
Co., 25 Utah 76, 69 Pac. 528.

APPEAL from District Court, Third District; C. W. Morse, Judge.

Action by Benjamin Sanford against Mark Kunkel and others, to foreclose a mechanic's lien, in which A. H. Walsh and an other intervene. From a judgment in favor of plaintiff and interveners for less than the relief demanded, they appeal.

REVERSED.

*Patterson & Moyer* for appellants.

*James Ingebretsen* for respondents.

### APPELLANT'S POINTS.

In case buildings situate on premises covered by a lien are removed from such premises without the consent of the holder of the lien the lien follows the buildings so removed and attaches thereto in their new location and equity has power to enforce the same by proper order. (*Partridge v. Hemenway,* 89 Mich. 545, 50 N. E. 1084, 28 Am. St. Rep. 322; *Hamlin v. Parsons,* 12 Minn. 59; *Betz v. Muench* [N. J. Eq.], 13 Atl. 622; *Turner v. Mebane,* 110 N. C. 413, 14 S. E. 974, 28 Am. St. Rep. 697; *Loan & Trust Co. v. Parmalee,* 5 S. D. 341, 58 N. W. 811; *Dorr v. Dudderar,* 88 Ill. 107; *Hoskin v. Woodward,* 45 Pa. St. 42; *Latham v. Blakely,* 70 N. C. 368; *Bishop v. Honey,* 34 Texas 245; *Gas Co. v. Lyman,* 62 Ill. App. 538.)

### RESPONDENT'S POINTS.

A mechanic's lien can not be had or enforced against a building alone, separate from the land on which it stands where no statute expressly allows it. (*Fathmen Co. v. Christophel,* 60 Mo. App. 106; *State v. Hailey,* 71 Mo. App. 200; *Mayes v. Murphy,* 93 Mo. App. 37; *Newman v. Biggs,* 78 Mo. App. 675; *Trich v. Norton,* 10 Col. 337; *Tracey v. Rog-*

*ers*, 69 Ill. 622; *Chicago S. F. G. Co. v. Lyman*, 62 Ill. App. 538; *Smith v. Barnes*, 38 Minn. 240; *Buckout v. Swift*, 27 Cal. 433; *Hill v. Gwin*, 51 Cal. 47; *Huff v. Jolly*, 41 Kansas 537; *Early v. Burt*, 68, Ia. 716; *Kellogg v. Manufacturing Co.*, 1 Walsh 407; *Dustin v. Crosby*, 75 Maine 75; *Babbott v. Condon*, 27 N. J. Law 155; *Railroad Co. v. Johnson*, 2 Wash., 112; *Wayne v. Brascoe*, 38 Mich. 587; *Jessup v. Stone*, 13 Wis. 521; *Gull Lumber Co. v. Briggs*, 9 N. D. 485; *Fetter v. Nelson*, 51 Ky. 90; *Presbyterian Church v. Jevne*, 83 Ill. 261; *Dutro v. Wilson*, 5 Ohio St. 101; *Sheer v. Cummings*, 80 Tex. 294; *Underhill v. Corwin*, 15 Ill. 557.)

STRAUP, J.

1. This is an action brought by Sanford against Kunkel, the Utah Lumber Company, and Charles E. Murphy, defendants, to foreclose a mechanic's lien. Appellants Cain and Walsh were made parties and intervened. Judgment was had in favor of defendants and against plaintiff and interveners. The appeal is on the judgment roll, without a bill of exceptions containing any evidence. The assignments relate only to the conclusions of law. The findings, so far as material, show: On August 1, 1903, Kunkel was the owner of lots 8, 9, and 10. He then entered into a contract with appellant Cain to furnish plans and specifications and to superintend the construction of two dwellings to be erected on said lots; on August 5th, with appellant Sanford to construct the cellar walls and to do the carpenter work; on August 3d, with appellant Walsh to do the plumbing; on August 5th, with Morrison Merrill & Co., to furnish lumber, hardware, and other material for the house on lot 10 and the south half of lot 9. Cain commenced his work on the 1st day of August, 1903, Walsh on the 3d, and Sanford on the 8th. The last work performed by them was on the 27th day of October, 1903. Morrison Merrill & Co., furnished the first material August 18, and the last October 26, 1903. The two buildings were erected on the said lots, one house substantially on lot 8 and the north half of lot 9, and the other on lot 10 and the south

half of lot 9 without any fence or barrier between them and all of said land was necessary for the use and occupation of said buildings. Appellants Sanford, Walsh, and Cain performed labor and furnished material on both houses in pursuance of their contracts. When the building on lot 8 and the north half of lot 9 was almost finished and the contracts of appellants nearly completed, on or about the 12th day of September, 1903, the respondents, the Utah Lumber Company and Charles E. Murphy, its manager, without the knowledge or consent of Kunkel, the owner of the ground, or of the appellants, removed said building from said lot 8 and the north half of lot 9 to lots 4 and 3 adjoining and owned by the Utah Lumber Company, and there caused it to be attached to a brick foundation. On November 9, 1903, Sanford filed a notice of lien on lots 8, 9, and 10; Walsh on November 7, 1903; Cain on November 4 1903; and Morrison Merrill & Co. on November 26, 1903. Sanford on the 18th day of September, 1903, Walsh on the 24th day of September, and Cain on the 26th day of October, also filed notice of liens on lots 4 and 3; wherein, among other things it was stated that the building thereon was erected on lot 8 and north half of lot 9 for Kunkel, and that after it was substantially completed the Utah Lumber Company and Charles E. Murphy forcibly, wrongfully, and without the knowledge or consent of Kunkel or the lien claimants, removed it therefrom to lots 4 and 3. Morrison, Merrill & Co. assigned its claim to Cain. Kunkel defaulted. Appellants prayed that their liens be foreclosed against lots 8, 9, and 10, and, if the proceeds of sale be insufficient to satisfy them, that then the house wrongfully removed from lot 8 and the north half of lot 9 be sold and the proceeds applied on such deficiency, and that they be granted such other relief as in equity they may be entitled. The trial court decreed a foreclosure as to lots 8, 9, and 10. Because of the removal of the building from lot 8 and the north half of lot 9, and its being attached to a brick foundation on lots 4 and 3, the court ruled the lien on the building was lost and did not follow it to its new location, hence denied appellants all relief with respect there-

to, and merely gave them a deficiency judgment against Kunkel. This ruling of the court presents the matter for review.

2. Section 1372 of the mechanic's liens statute (Rev. St. 1898) provides:

"Mechanics, materialmen, contractors, subcontractors, builders and all persons of every class performing labor upon or furnishing materials to be used in the construction, etc., of any building, etc., and also architects, etc., who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, or superintendence, etc., shall have a lien upon the property upon which they have rendered service, or performed labor, or furnished materials, for the value of such service rendered, labor done, or materials furnished, by each respectively, whether at the instance of the owner or of any other person acting by his authority or under him as agent, contractor, or otherwise; provided, that a lien or liens shall attach only to such interest as the owner or lessee may have in the real estate."

Section 1379:

"The liens granted by this chapter shall extend to and cover so much of the land whereon such building, structure or improvement shall be made, as may be necessary for the convenient use and occupation of such building, structure or improvement, and the same shall be subject to such liens; and in case any such building shall occupy two or more lots or other subdivisions of land, such lots or other subdivisions shall be deemed one lot for the purposes of this chapter," etc.

Section 1384:

"The liens provided for herein are preferred to any lien, mortgage, or other incumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance of which the lienholder had no notice and which was unrecorded at the time the building, improvement, or structure was commenced, work done, or materials commenced to be furnished."

Section 1385:

"The liens herein provided shall relate back to and take effect as of the time of the commencement to do work upon and furnish materials on the ground for the structure or improvement, and shall have priority over any lien or incumbrance subsequently intervening, except a lien herein provided for of the same class, or which may have been created prior thereto, which was not then recorded and of which the lienor under this chapter did have actual notice."

Section 1386 provides that the original contractor, within sixty days after the completion of his contract, and a subcontractor within forty days after furnishing the last material or performing the last labor for any building, shall file for record a notice of intention to hold and claim a lien. Section 1392 provides:

"The court shall cause the property to be sold in satisfaction of the liens and costs, as in the case of foreclosure of mortgages, subject to the right of redemption of the owner and creditors as provided by law," etc.

A finding was made that, at the time of the removal of the building, appellants had no notice of lien filed of record, but it will be observed that, under the statute and as construed by this court, the lien has its inception from the time of the commencement of the work and the furnishing of materials, and, by relation, takes effect as of that date, and is given priority over any lien or incumbrance subsequently intervening, or which may have been created prior thereto which was not recorded and of which the lien claimants had not actual notice. (*Culmer v. Caine,* 22 Utah 216, 61 Pac. 1008; *Fields v. Daisy Min. Co.,* 25 Utah 76, 69 Pac. 528.) Appellants were not required to file their notice of liens until sixty days after the completion of their contracts, if original contractors, or within forty days after furnishing the last material or performing the last labor on the building. The notice of liens was filed within such time, and no question is made that they were not filed within time. The claim made by respondents is that, under the statute the lien does not attach to the building alone independent of the land upon which it is erected, but attaches only to the realty and to the building as a part of it; that when the building, although seized by the lien as part of the realty, is severed and removed therefrom, it ceases to be a part of the realty, and hence ceases to be charged with the lien. If such assertion is correct in principle, it leads to the inevitable conclusion that a contractor may enter into a contract with the owner of land worth $500, to erect thereon a building of the value of $10,-000, and when it is completed all but painting, the owner, without the knowledge or consent of the contractor, may re-

move it to an adjoining lot and thereby substantially destroy the contractor's lien. The cases cited by respondents do not support such a doctrine. They are to the effect that where a building is constructed on ground not owned by the person with whom the contract of construction was entered into and for whom the building was erected no lien attached to either the land or the building, on the theory that the lien law contemplated that a party for whom a building is erected and against whom and whose interest the lien is to be enforced, shall have some estate or interest in the land upon which the building is erected. Cases are also cited to the effect that where a building is erected for one on land owned by him the lien does not separately attach to the building, in the sense that the lien may be enforced against the building, alone and independent of the land, unless the statute by express terms gives such right, upon the ground that it is the owner's right to have the whole property sold for the satisfaction of the debt, and that by the sale of the building alone and its removal from the premises his right of redemption would be defeated. These cases do not avail respondents, because the facts upon which they are found do not here exist. Appellants made their contracts with and and performed labor and furnished materials for Kunkel, the owner of the land upon which the building in question was constructed. The case at bar is, therefore unlike one where a building is constructed for one on ground not owned by him and where no lien at all existed and attached. (*Morrison Merrill & Co., v. Clark,* 20 Utah 432, 59 Pac. 235, 77 Am. St. Rep. 924.)

By express provisions of the statute the liens taking effect from the commencement of the work or the furnishing of material, the building, as a part of the realty on which it was erected for the owner of the realty was seized and charged with the liens at the time when respondents removed the building, just as effectually as if it had been removed after the notice of liens had been filed and recorded. As the liens had attached, and could not thereafter be destroyed or impaired by the owner selling or incumbering the realty, we

30 Utah—25

cannot see on what just principle they may be destroyed or impaired by the owner severing, removing, and selling that which is a part of the realty, much less when such is done by the wrongful act of a mere stranger and trespasser. When the lien has once attached, it cannot be defeated by the removal of the building to another lot. (Boisot, Mechanics' Liens, section 182; *Bishop v. Honey,* 34 Tex. 245.) The case here is analogous to those where a building was removed from mortgaged premises without the consent of the mortgagee, in reference to which it was said:

"So far as the house was concerned, it was a part of the property covered by the mortgage and it contributed largely to the value of the security. As it was removed from lot 6 without the knowledge or consent of the mortgagee and with the knowledge of all the parties claiming . any rights adverse to those of the mortgagee, we see no reason why such mortgagee should not be permitted to follow the house after. having exhausted lot 6 and apply it if necessary to the payment of the mortgage debt.' This course would give the mortgagee the benefit of the security for which he contracted." It does not necessarily follow "that the house in this case became a part of lot 7 by the removal thereupon and so escape from the lien of the mortgage. . . . We see no reason why complete relief should not be afforded the mortgagee in this action. As lot 6 is to be first sold if its proceeds satisfy the judgment the house will not be sold at all. If, upon the sale, lot 6 proves insufficient, then the house will be called upon for the unsatisfied balance or as much of it as it will pay. There is no unfairness in this." (*Hamlin v. Parsons,* 12 Minn. 108 [Gil. 59], 90 Am. Dec. 284; *Partridge v. Hemenway,* 89 Mich. 454, 50 N. W. 1084, 28 Am. St. Rep. 322; *Turner v. Mebane,* 110 N. C. 413, 14 S. E. 974, 28 Am. St. Rep. 697; *Dakota Loan & Trust Co. v. Parmalee,* 5 S. D. 341, 58 N. W. 811; *Dorr v. Dudderar,* 88 Ill. 107; *Patton v. Moore,* 16 W. Va. 428, 37 Am. Rep. 789; *Rogers v. Gilinger,* 30 Pa. 185, 72 Am. Dec. 694; *Hoskin v. Woodward,* 45 Pa. 42.)

The case of *Verner v. Betz,* 46 N. J. Eq. 256, 19 Atl. 206, 7 L. R. A. 630, 19 Am. St. Rep. 387, cited as holding a contrary doctrine, is distinguishable. There the house, after its removal from mortgaged premises and after it was attached to other land, was sold to a bona fide purchaser without notice. In that case the trial court ruled that the purchaser had notice and purchased with knowledge of all the circumstances, and, therefore, the mortgage lien on the building was not discharged. (13 Atl. 622.) The appellate court,

on the theory that the purchaser was an innocent purchaser for value, reversed the judgment. The appellate court said that the decisive question was: "Assuming that the appellant Verner bought the house and paid for it a valuable consideration without knowledge of its removal," can a court of equity return it to the wasted property after being affixed to other lands and sold to a bona fide purchaser? After discussing the question in view of the assumed premises, the court concludes: "Having found that the appellant Verner is a bona fide purchaser of the building in controversy affixed to his land," the decree is reversed and modified. Here, the respondents, having themselves removed the building without the knowledge or consent of appellants or of Kunkel, the owner, can in no sense be considered innocent purchasers, but are justly characterized trespassers and wrongdoers. The case of *Buckout v. Swift,* 27 Cal. 433, 87 Am. Dec. 90, supports the contention of respondents. There a flood carried a building from mortgaged premises into a street a short distance from the mortgaged lot. While standing in the street the mortgagor sold it to a third person, who was about to move it on land of his own. The mortgagee brought an action to restrain him from so doing. The court, in holding that the mortgagor had the right to sell it and the purchaser to convert it to his own use, did so on the theory that by its severance and removal from the freehold the building ceased to be realty and was withdrawn from the operation of the mortgage lien. It was there said:

"So far as legal effect is concerned, it matters not whether the severance was by the act of God or the act of man. The severance, *proprio vigore,* changed the character of the property from real to personal, irrespective of the means by which it was accomplished."

This case is cited with approval in *Vernor v. Betz,* supra, We think it is unsound in principle. It has been criticised in notes to 28 Am. St. Rep. 325, and was repudiated in *Loan & Trust Co. v. Parmalee,* supra, and in *Patton v. Moore* supra.

3. It is also urged by respondents that the court should not decree the removal of the building, because to remove it

will injure their freehold. The court has not found that the removal of the building will injure their freehold. But if it did to some extent injure it, respondents are not in a position to complain thereof. They must be held to have anticipated the consequences of their own wrongful act. When they invaded the freehold from which they removed the house, thus wasting and damaging the former, and attempting to free the latter from the operation of the lien with which it was charged, they must be held to have known such act was unlawful, and, when they attached the building to their freehold, that they had no right or authority to do so. When they are called upon to surrender the fruits of their illegal transaction their claim of injury in consequence thereof does not appeal very persuasively to equity. A court of equity is more solicitous in compelling restoration to the wronged than it is in protecting the wrongdoer in something which is the direct result of his wrongful act. In so doing the court should not inflict unnecessary or avoidable injury. But at all events it will not encourage the spoliation of realty by a wrongdoer, permit him to destroy a lien attached to the most valuable part of it, and thus allow the justice of the lien statute to be defeated. In case the building here is attached to the freehold of respondents in such a way that it cannot be removed without great injury to the building or great injury to their freehold, we think it will not be violative of any principles of equity, as between the respondents and appellants, to require a sale of both the freehold and the building, to the extent of the deficiency, after exhausting the freehold from which the building was wrongfully removed. Respondents cannot well complain of this if their wrongful act renders it necessary to be done.

The judgment of the lower court is reversed, with directions to modify the judgment and to decree, first, the sale of lots 8, 9, and 10 in satisfaction of appellant's liens, and, if any deficiency remain, that then the building removed by respondents to lots 4 and 3 be sold and the purchaser be given a right to remove it, if such can be done without great injury to the building or the freehold upon which it stands, and, if

such cannot be done, that then the court decree the sale of lots 4 and 3, together with the building thereon, to the extent of such deficiency; the surplus, if any, to be yielded to the respondents, and that they be given the right of redemption as in the case of foreclosure of mortgage. Costs to be taxed against respondents.

McCARTY, J., concurs.

BARTCH, C. J. (dissenting).

Viewing and considering the facts as they appear from the evidence in the record, in the light of the decisions of the courts made under statutes similar to or like ours, and of the law as laid down by the text-writers with reference to such statutes as ours, under which the lien extends to and covers the land and not alone the building, I am unable to concur with my associates in this judgment, and therefore dissent.

ON REHEARING—OPINION MODIFIED AND PETITION DENIED.

STRAUP, J.

A petition for rehearing has been filed in this cause (reported in 85 Pac. 363). Upon further consideration of the case we have concluded that our directions modifying the judgment of the court below are too broadly stated. However, in order that a proper modification thereof may be made, we deem it unnecessary to reopen the case and to have it resubmitted.

The question of law presented to us at the hearing was whether a building on which a mechanic had performed labor or for which a materialman had furnished material, under contract with the owner of the ground, is discharged from the operation of a mechanic's lien by a removal of the building, when about completed, from the premises upon which it was constructed, without the consent of the owner and of the lien claimants. We held that it could not be so discharged, and we adhere to such holding. That was the only question presented on briefs or in oral argument. No point was made,

nor any question raised as to any difference in the status of the several claimants, and the case was considered and determined by us without reference to any such difference. We assumed that all the claimants had either performed labor on or furnished material for the building afterwards removed by respondents, the Utah Lumber Company and Murphy, and our attention was not directed to anything to the contrary. Now it is pointed out that the claimant, Morrison, Merrill & Co., whose claim had been assigned to Cain, furnished no material for nor performed labor on the building removed by the respondents from lot 8 and the north half of lot 9, but that, under contract, it had agreed to furnish, and that it did furnish, material for the building constructed on lot 10 and the south half of lot 9. Its lien, therefore, attached only to the last-named lots and to the building thereon, and not to lot 8 and the north half of lot 9, from which the building was removed, and its rights were, therefore, not affected by the removal of the building. When we directed a sale of the removed building, on or for which Morrison, Merrill & Co. performed no labor nor furnished material, in satisfaction of its claim, we committed error. Our directions to the trial court are therefore modified, and it is directed to sell lot 10 and the south half of lot 9, together with the building and other improvements thereon, the proceeds of which are to be applied in satisfaction of the claims for material furnished and labor performed on such building; to sell, first lot 8 and the north half of lot 9, the proceeds of which are to be applied in satisfaction of the claims for materials furnished and labor performed on the building removed therefrom, and, if any deficiency remain, that then the building removed therefrom and on lots 3 and 4 be sold and the proceeds of sale applied in satisfaction of such deficiency, and the purchaser at such sale be given the right to remove the building from lots 3 and 4. In view of there being no finding that a removal of the building from lots 3 and 4 will greatly or at all injure such freehold, it was unnecessary to direct, as we did in such event, also a sale of lots 3 and 4; and in such particular our directions are also modified.

With these modifications our original opinion is adhered to, and the petition for a rehearing denied.

McCARTY, J., concurs.

BARTCH, C. J.
I am of the opinion that a rehearing ought to be granted in this case.