# No. 14,952.

## SMITH *v.* STROEHLE MACHINERY AND SUPPLY COMPANY.
### (126 P. [2d] 341)

Decided May 11, 1942. Rehearing denied June 1, 1942.

Mr. HAROLD B. WAGNER, for plaintiff in error.

Mr. LEROY J. WILLIAMS, Mr. JAMES M. SERIGHT, Mr. JAMES D. DOYLE, Mr. C. CLYDE BARKER, Mr. HAROLD M. WEBSTER, Mr. DAVIS L. BARKER, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS case involves the question of priority of liens between several claimants. The principal dispute is that between plaintiff in error Smith, the holder of a deed of trust and chattel mortgage on the real and personal property of Boulder Ore Sampler, Inc., and the Stroehle Machinery Company, defendant in error, plaintiff below. The claims of Clyde J. Miller and the Boulder Finance Company, chattel mortgagees, are also involved. The court held that the Stroehle company had established its claim to a lien as of October 13, 1939, prior to that of Smith dated January 22, 1940, and judgment was awarded in favor of the company in the sum of $411.85 for materials, supplies and labor that were "wrought" into and made a part of a smelter owned by the said Boulder Ore Sampler, Inc. The trial court further adjudged that Miller and the Boulder Finance Company be dismissed without prejudice to their right to remove the personal property covered by their respective chattel mortgages, both of which were held superior to the Stroehle company's lien. Reference will be made to the parties as they appeared below or by name.

· Boulder Ore Sampler, Inc., had originally built and operated its smelter at Boulder, but later moved it to Forks Creek in Gilpin county and it was in connection with the reconstruction of the plant at its new location that plaintiff furnished the materials, equipment and labor that are the basis of the lien in controversy. The complaint states that said materials, equipment and labor were furnished and performed under an express oral contract with Boulder Ore Sampler, Inc. on "continuous account;" that the total charges were $511.85; that there was a $100 credit, leaving a balance of $411.85. In its answer Boulder Ore Sampler admitted that it had requested plaintiff to make certain repairs on its machinery from time to time; that it owned the property in question subject to Smith's deed of trust and chattel mortgage; that the smelter was operated as one enterprise, and that it used all of the above materials and equipment in connection therewith, but denies that the value therefor was $511.85 and denies that the said materials were furnished or said labor performed continuously for an agreed price.

The principal issue in the case is whether the labor and materials were furnished and performed under a continuing contract, or whether each job was distinct and separate from all the other repair jobs and not "continuous" within the meaning of section 36, chapter 101, '35 C.S.A. Counsel for plaintiff in error urges nine different points for reversal, but because of the view we take of the matter, we shall consider only five of them particularly, and dispose of the others as indicated.

 1. It is contended that, "The plaintiff below is not entitled to any judgment, because its complaint is based solely on an express contract, and there was no evidence of an express contract." The record discloses that there was evidence of an express contract. Initiatorily, we note that Smith in his answer admits that Boulder Ore Sampler requested plaintiff to make various repairs on its machinery. Fred Stroehle, vice presi-

dent of plaintiff company, testified that the manager of Boulder Ore Sampler came to their plant and requested them to do some work—"to do this work and get it out in a hurry"; that "they were closed down and they could not operate unless they had this work done;" and. that they called on plaintiff company for labor or material if they needed it. Another witness—employee of plaintiff company—testified: "They came in later and supervised the work." That was express authorization, and later when the work was completed, statements sent, and the indebtedness acknowledged by payment thereon, an express contract was established. 13 C.J. 240, 17 C.J.S. 315. It should be noted, too, that there was no suggestion of this alleged variance in Smith's motion for a nonsuit, nor was any motion to dismiss made on account thereof.

2. Having held that the evidence discloses an express contract, we see no occasion for passing on the question of alleged deficiencies affecting recovery on an implied contract.

3. It is further argued that, "Plaintiff is not entitled to a mechanic's lien because it did not file its statement in apt time, except as to work done on two items, which were personal property," and hence not lienable. The statement of lien of the Stroehle company was filed March 12, 1940. Smith contends that the only items furnished by plaintiff within the three months preceding were a collar which was fastened to a shaft by a set screw, and a hook for a clinker bar, both of which were personal property, and as such, ineffective in extending the time for filing the lien statement. Plaintiff's contention, however, is that these items went into and became an integral part of the plant, which contention, we think, is sound because the collar was affixed to the machinery and the hook was necessary to the operation of the furnaces.

It is well established that if an article constitutes part

of a plant or machinery necessary to the operation of the whole, or its use is essential to the operation of some part of the machinery which is physically attached to the freehold, it may be classed as a fixture subject to a lien even though it lacks permanent physical attachment to the realty. *Hardware Co. v. McCarty,* 10 Colo. App. 200, 219-220, 50 Pac. 744.

■ 4. Defendant says, "The plaintiff is not entitled to a mechanic's lien because the time for filing a statement of lien started to run from the completion of the various jobs." This challenge raises the most important question in the case. It is true if the various jobs were done under independent, separate contracts and not on a continuous account no lien would have been established. Section 36, supra. However, the court found that there was a continuous contract for labor and materials to be performed and furnished during the time set forth in Exhibit B, which was plaintiff's statement as to the various items that constituted the account, beginning with October 13, 1939, and ending on December 22, 1939. The record discloses that the labor and materials were furnished at different times, as required, but the evidence clearly establishes the fact that all items furnished became an integral part of, or were necessary to, the successful operation of the smelter.

"The acts of the plaintiffs in performing labor and furnishing materials, all tended to the accomplishment of one purpose viz: the construction [in the case at bar reconstruction] of a smelting plant, and were practically continuous. All the items in the account related to one transaction and it was therefore a continuous account, the right to initiate a lien for which, accrued from the date of the last item." *Hardware Co. v. McCarty, supra.*

■ "Where the work done, or materials furnished, is continuous in its character, the contract is to be regarded as an entirety, and the lien attaches for work done and materials furnished, after, as well as before

the purchase." *Mellor v. Valentine,* 3 Colo. 255, 258.

"This language [referring to that in an earlier act which corresponds in substance with section 23, chapter 101 re' contents of lien statement] clearly contemplates an open current account, consisting of different items, furnished at different times, and that such an account be treated as an entirety." *Mellor v. Valentine, supra.*

No good purpose would be served by detailing the various items as set forth in Exhibit B. Statements of the account were sent monthly. Their correctness was never challenged. One hundred dollars was paid on the account, and the superintendent admits everything represented by the items was furnished and performed to facilitate the operation of the plant.

Whether a lien is claimed under section 15 or 18 of chapter 101, '35 C. S. A. is immaterial in this case, because both sections are to be construed together. *International Trust Co. v. Clark Hardware Co.,* 66 Colo. 210, 180 Pac. 300 (Section 4 referred to therein corresponds to section 18. See S. L. 1915, c. 116).

5-9. It is urged that, "If it was the court's purpose to determine the rights of the defendants among themselves, it did not have the power to do so, under the pleadings and evidence." This statement, which we interpret to include counsel's number five, six, seven, eight and nine, is directed to the alleged action of the court in allowing Clyde Miller and the Boulder Finance Company to take the property covered by their respective chattel mortgages. The record discloses no issue in the pleadings as to the validity or priority of these chattel mortgages as against Smith. As between plaintiff and these chattel mortgagees, the court found that plaintiff's lien was junior to them, and it is not complaining. The court in dismissing the Boulder Finance Company and Clyde J. Miller did so without prejudice to their right to remove the personal property covered by their chattel mortgages. Thus, as to these mortgagee parties

the decree and pleadings clearly seem not to preclude further action if such is necessary to a complete determination of their rights.

We find no error in the court's disposition of these matters. The judgment is affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE KNOUS and MR. JUSTICE BOCK concur.