374 P.2d 254

KING BROS., INC., a corporation, Plaintiff
and Appellant,

v.

UTAH DRY KILN COMPANY, Inc., a cor-
poration, Defendant and Respondent.

No. 9626.

Supreme Court of Utah.

Aug. 22, 1962.

Orville Isom, Cedar City, for appellant.

Olsen & Chamberlain, Richfield, for respondent.

CROCKETT, Justice.

Plaintiff King Bros. sued for the reasonable value of materials supplied to Oregon Dryer Company, a contractor building a dry kiln plant for the defendant Utah Dry Kiln Company. There is no privity of contract between the plaintiff and defendant. The claim of liability is predicated upon the failure of the defendant property owner to require its contractor to furnish a performance bond as required by Sec. 14–2–1, U.C.A.1953, quoted below.

Defendant made a motion to dismiss on the ground that the complaint "does not state a cause of action upon which relief can be granted." After argument of the motion, the trial court stated that he would treat it as a motion for summary judgment and dismissed the action. Plaintiff appeals.

During October 1959, plaintiff King Bros. and its assignor, Mead and Associates, both Oregon corporations, each sold materials valued at $2,692 and $1,469.19, respectively, to the Oregon Dryer Company, the contractor hired by the defendant to build a dry kiln plant on its property at Panguitch, Utah for the drying and curing of lumber. The complaint alleges that a furnace, a furnace casing, motor-driven fans, pipes and hoods were "shipped to * * * [and] installed in the building of the defendant."

The portions of the statutes upon which this action is based are:

Section 14–2–1, U.C.A.1953: "The owner of any interest in land entering into a contract, involving $500 or more, *for the construction, * * * of, any building, structure or improvement upon land* shall, before any such work is commenced, obtain from the contractor a bond * * * conditioned for the * * * prompt payment for *material furnished and labor performed under the contract.*" (Emphasis added.)

and,

Section 14–2–2, U.C.A.1953: "Any person * * * who shall fail to obtain such * * * bond * * * shall be personally liable to all persons who have furnished materials * * * for the reasonable value * * *."

In his written memorandum the trial judge made unmistakably clear his disdain for the statutes just quoted, and that he regarded them as conferring an unjustified "privilege upon one class and a penalty upon another." It appears most likely that this idea was largely responsible for his ruling dismissing the action. That question was given quite thorough consideration by this court in the case of Rio Grande Lumber Company v. Darke.[1] Without belaboring the matter here, we refer to that decision and the reasoning given therein upon which the statute was held to be valid. Nothing has been suggested to persuade us that we should reconsider the matter.

The defendant has argued and briefed the proposition that the materials furnished do not come within the terms: "structure * * * or improvement * * * upon land" and are thus not within the purview of the statute.

This contractors bond statute is closely related in purpose, and the language material to this issue is practically identical, to that of our mechanics lien statute, Sec. 38–1–3, U.C.A.1953, which provides that persons furnishing labor or material shall have a lien for the

"* * * construction or alteration of, or addition to, or repair of, any building, structure or improvement upon land * * *."

The mechanics lien statutes were designed to prevent the land owner from taking the benefit of improvements placed on his property without paying for the labor and materials that went into it.[2] Under those statutes the land owner was frequently the loser when the contractor failed to pay for material or labor. To protect himself it was necessary to withhold funds or to demand a performance bond. The passage of the statute requiring the property owner to demand a bond from his contractor was a quite natural consequence of this practice. This protects the labor and materialmen as well as the land owner.

Because of the common purpose of these lien and contractors bond statutes,[3] and their practically identical language, adjudications as to what is lienable under the former are helpful in determining the proper application of the latter.

---

1. 50 Utah 114, 167 P. 241, L.R.A.1918A, 1193.
2. See discussion in Rio Grande Lumber Co. v. Darke, footnote 1, supra.
3. See discussion in Crane Co. v. Utah Motor Park, 8 Utah 2d 413, 416, 335 P. 2d 837, 839 (1959).

## 342

■ Ordinarily there is not much difficulty in telling when materials become part of the realty. But in the fringe areas where uncertainties exist their status frequently depends upon the particular circumstances. The facts must be ascertained so that under the guidance of applicable principles of law the correct determination can be made. In order to qualify under these statutes it is necessary that there be an annexation to the land, or to some permanent structure upon it, so that the materials in question can properly be regarded as having become a part of the realty; or a fixture appurtenant to it; and this must have been done with the intention of making it a permanent part thereof.[4] That the addition is consistent with the use to which the property is put is often helpful in making the determination.[5]

■ In the face of the motion to dismiss the complaint, the trial court and this court on review, are obliged to survey its allegations in the light most favorable to the plaintiff; and in a similar manner to indulge in its favor all reasonable inferences as to proof that may be adduced thereunder. From the standpoint of the administration of justice it is wise and desirable to adhere to a policy of being reluctant to turn a party out of court without trial. It can justifiably be done only if the party could not in any event establish a right to recover.[6] In view of those principles, there should be a trial and the taking of evidence to determine whether such things as a furnace, furnace casing, motorized fans, pipes and hoods, which often become permanent adjuncts to a building, were or were not so used as to come within the meaning of the contractors bond statute discussed above.

■ We turn briefly to another contention raised by defendant: that the seller's right is an incident of the contract of sale and is therefore controlled by the law of the state where the contract was executed, Oregon.[7] We have no concern with that proposition here. The statutes under consideration impose a duty on a property owner to exact a bond from a contractor who improves his property; and for failure to do so, give a right of action against him in favor of a supplier of labor or material who would benefit from such a bond. They make no distinction between resident and nonresident. The right they create inures to the benefit of any person coming within its terms.

4. Westinghouse Elec. Supply v. Hawthorne, 21 Wash.2d 74, 78, 79, 150 P.2d 55, 57 (1944); and see 36 Am.Jur. Mechanics' Liens, § 78 (1941).
5. Ibid.

6. See Morris v. Farnsworth Motel, 123 Utah 289, 259 P.2d 297.
7. Citing 11 Am.Jur. Conflict of Laws, § 80 (1941).

It is necessary that the case be remanded for further proceedings not inconsistent with this opinion. Costs to plaintiff (appellant).

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.