395 P.2d 914

**METALS MANUFACTURING COMPANY, a Utah corporation, Plaintiff and Appellant,**

v.

**BANK OF COMMERCE, a Utah corporation, Defendant and Respondent.**

**No. 10116.**

Supreme Court of Utah.

Oct. 23, 1964.

Clyde, Mechan & Pratt, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, John A. Dahlstrom, Salt Lake City, for respondent.

HENRIOD, Chief Justice.

Appeal from a judgment to the effect that certain aluminum railings and gates installed in a bank were not "an addition, alteration or repair of, any building, structure or improvement on land," such as to protect a third party supplier thereof against failure of the bank to procure a bond from its installing contractor under Title 14–2–1 and 2, Utah Code Annotated 1953. Reversed, with costs to plaintiff.

The facts in this case are undisputed. Therefore we are constrained to view them with an eye focused on the wording, purpose and intent of the statute involved, and in a light favorable to those whom it intends to protect.

Briefly, the facts were this: In 1963, the bank negotiated for a 10-year lease on a building. A lease was prepared by an attorney, which contained no provision with respect to property interest in fixtures, signs or structures the bank might choose to place on the property. The bank insisted on such a provision. Consequently, the lease was revised with a clause establishing rights to such items inter se. It provided that the bank could "make alterations, attach fixtures and erect additions, structures or signs * * *" which shall be and remain the property of the lessee and may

be removed therefrom by the lessee. Thereafter the bank contracted with one Drews to obtain and place on the premises certain aluminum railings and gates, according to specifications demanded by the bank. With the bank's knowledge, Drews obtained the railings and gates from plaintiff, which were fashioned according to said specifications, and installed them in the place directed by the bank. The bank without having procured any contractor's bond under the statute, paid Drews, but Drews did not pay plaintiff.

The railings and gates were attached to the floor in 14 places by metal plates, each plate being anchored to the floor with four ¾" screws, and to walls in eight places and counters in four places in a similar manner, all of which were stabilized in 10 places by steel shafts sunk into holes 1" in diameter and 1½" in depth. It is conceded that by removing the screws and plates, the railing could be removed and used elsewhere *in the building,* but it is equally obvious they were fabricated to be used in *this* particular building during the term.

■ The bank leans heavily on the principle that whether facilities such as these are part of the realty depends on the intentions of the parties. Generally this is true and binds the parties to the lease. However, it would seem to be unrealistic and unreasonable to conclude that such parties by agreement among themselves, could bind third party suppliers of materials *to the terms of an agreement to which such suppliers* were not privies and the terms of which they do not know. Such conclusion could result in easy circumvention of the statute whose purpose clearly is to protect suppliers, if what they supply falls within the clear import of the statute. A simple illustration: Where parties to a lease agree inter se that a furnace imbedded deeply in cement would be considered personalty, no one would consider that the supplier of the furnace, under the statute, would be bound by the agreement between lessor and lessee, without statutory protection.

It is significant that although the forepart of the statute mentions "construction, addition to, or alteration or repair of" buildings, etc., that in the same paragraph specifically it is required that any person who "has furnished materials or performed labor for or upon any such building, structure or improvement, payment for which has not been made, shall have a direct right of action against the sureties upon such bond" for the value of the materials or labor.

This being true, the bond, it would seem, if furnished would protect the plaintiff here. Failure to furnish such bond by the bank should not water down this statutory interdiction.

■ With due deference to the trial court's conclusion, we think that under the uncontroverted facts of this case, the stat-

ute operates here in favor of plaintiff. Not as precedents for the facts of this particular case, but to reflect the purpose and intent of statutes such as this, we refer the reader to King Bros., Inc. v. Utah Dry Kiln Co., and cases therein cited (13 Utah 2d 339, 374 P.2d 254, 1962).

McDONOUGH, CALLISTER, CROCK-ETT and WADE, JJ., concur.