440 P.2d 17

**KING BROS., INC., a corporation, Plaintiff and Appellant,**

v.

**UTAH DRY KILN COMPANY, Inc., a corporation, Defendant and Respondent.**

No. 10931.

Supreme Court of Utah.

April 19, 1968.

---

Orville Isom, Cedar City, for appellant.

Ken Chamberlain, of Olsen & Chamberlain, Richfield, for respondent.

CROCKETT, Chief Justice.

This appeal is the sequel to King Bros., Inc., v. Utah Dry Kiln Company.[1] Plaintiff sued to recover for the value of a furnace and appurtenances which it had furnished and a contractor had installed in the

1. 13 Utah 2d 339, 374 P.2d 254.

construction of a lumber-curing plant of the defendant, Utah Dry Kiln Company, near Panguitch, Utah. The action is based on the fact that the defendant in connection with building its plant failed to obtain the performance bond required by Secs. 14–2–1 and 14–2–2, U.C.A.1953, the pertinent language of which provides:

1. The *owner of any interest in land* entering into a contract, involving $500 or more, for the construction, addition to, or alteration or repair of, any building, structure or improvement upon land shall, before any such work is commenced, obtain from a contractor a bond * * * conditioned for the * * * prompt payment for material furnished and labor performed under the contract.

and

2. Any person * * * who shall fail to obtain such * * * bond * * * shall be personally liable to all persons who have furnished materials * * * for the reasonable value * * *.

The only point of consequence in this case is the defendant's contention, accepted by the trial court, that defendant was not required to obtain the bond because it was not shown to be the owner of any interest in the land upon which the plant was constructed. We are not persuaded of the correctness of this contention.

As was pointed out in Metals Manufacturing Co. v. Bank of Commerce,[2] these statutes should be interpreted and applied in such manner as to carry out the purpose for which they were created: to protect those who supply labor and materials. That case is cognate to the instant one. The Bank had a 10-year lease on a building under an agreement which provided that it could "make alterations, attach fixtures and erect additions * *. *" which should remain the property of the lessee (the Bank) and be removed. This court rejected the contention of the Bank that it had no obligation to obtain a performance bond in connection with the installation of certain aluminum railings and gates which were affixed to the floor by screws. We held that irrespective of the agreement of the parties inter se, as to third-party suppliers, the installation should be regarded as part of the realty. It was pointed out that it would be unfair to bind such suppliers to the terms of agreements to which they were not parties and of whose contents they had no knowledge.

By analogy, the same principle applies here. Plaintiff, as a supplier of a furnace and heating system to be installed in a lumber-curing plant, would have no practical way of knowing the details of arrangements between the one who was building the plant with others who may have actual title to the ground; and it would not

2. 16 Utah 2d 74, 395 P.2d 914.

seem to depart from ordinary good sense and business judgment for the plaintiff to assume that the defendant who had a plant costing in excess of $30,000 had at least some interest in the property upon which it was situated. However, as will be seen below, the solution of the problem here confronted is not entirely dependent upon who owned the title to the underlying land.

■ The statutes quoted above, which require the owner to obtain a bond from a contractor, are a natural development upon the mechanic's lien statutes which compel the owner of realty, who contracts for its improvement, to see that those who furnish the labor and materials are paid.[3] The requirement of the performance bond provides a means by which the owner can protect himself as well as the labor and materialmen. But if he fails to comply with the statute, it places upon him the burden of seeing that the labor and materials are paid for. Inasmuch as this statute arose from and has the same purpose as the lien statutes, adjudications as to the application of lien statutes are persuasive.[4]

■ The difficulty with the defendant's position seems to be in the misapprehension that in order for the statute to be applicable the owner-builder must have an interest in the freehold itself, that is the "soil" which underlies the building, as distinguished from the broader concept of the "realty" which is improved. This is not an indispensable requirement. The duty of obtaining a bond as imposed by Sec. 14-2-1 is upon: "The owner of *any* interest in land" who enters into a contract to construct an improvement thereon. The word "land" as used in the law, has since time immemorial been regarded as a generic term. It " * * * includes not only the soil, but everything attached to it, whether attached by the course of nature, as trees, herbage, and water, or by the hand of man, as *buildings,* fixtures, and fences."[5] This is particularly true with respect to these lien statutes which should be liberally construed to effectuate their purposes. This court has allowed a materialmen's lien to attach to interests less than fee simple, such as a leasehold estate,[6] and equitable interest,[7]

3. See Metals Manufacturing Co. v. Bank of Commerce, footnote 2 above; as to validity of mechanic's lien statutes see Rio Grande Lumber Co. v. Darke, 50 Utah 114, 167 P. 241, L.R.A.1918A, 1193.
4. See discussion in Crane Co. v. Utah Motor Park, Inc., 8 Utah 2d 413, 335 P. 2d 837.
5. See 42 Am.Jur., Property, p. 196; see also 73 C.J.S. Property § 7, p. 162, et seq.; that "interest in land" includes ownership of a portion of a building

placed thereon, see United States v. Certain Property, etc., D.C., 225 F.Supp. 498; and that machinery necessary to the operation of a plant (a smelter) see Smith v. Stroehle Machinery & Supply Co., 109 Colo. 460, 126 P.2d 341.
6. Buehner Block Co. v. Glezos, 6 Utah 2d 226, 310 P.2d 517; Metals Manufacturing Co. v. Bank of Commerce, footnote 2 above.
7. Cary-Lombard Lumber Co. v. Partridge, 10 Utah 322, 37 P. 572 (1894).

and to a building separate from the soil upon which it was erected.[8]

It is not questioned that the defendant owns the building in which this installation was made. Considered in the light of what we have said above it is our opinion that the building placed thereon should properly be regarded as part of the realty, and it therefore follows that the defendant of necessity must own some "interest in the land." The fact that the furnace and equipment in question were shipped by plaintiff as consigned to this job and used in the construction of the defendant's lumber-curing plant is a sufficient basis upon which to predicate liability for the defendant's failure to obtain the bond as required by the statutes referred to.

Remanded with instructions to enter judgment in favor of the plaintiff for the value of the materials it furnished. Costs to plaintiff (appellant). (Emphasis added.)

TUCKETT, J., concurs.

ELLETT, Justice (concurring).

█ I concur. However, I would agree with the dissent if I thought the defendant was a mere licensee on the lands of another. For reasons hereafter stated I cannot believe such to be the case.

█ Under the evidence given, the trial court would not say who did own the land upon which the dry kiln building of the defendant was located but found that the defendant did not own any interest therein. I think the trial judge was in error in making this finding, and the dissent must fail if this finding is erroneous.

The record shows that the land in question was owned either by J. E. Crofts & Sons, a partnership, or by Crofts-Pearson Industries, a partnership (now a corporation), or by both of the partnerships. In order to see the true picture, it would be helpful to understand the relationship existing between those two partnerships and the defendant corporation. That relationship is as follows:

| Partners of J. E. Crofts & Sons | Partners of Crofts-Pearson Industries | Stockholders Holding All Stock of Defendant Corporation |
| --- | --- | --- |
| John Crofts | John Crofts | John Crofts |
| Cy Crofts | Cy Crofts | Cy Crofts |
| Leo Crofts | Leo Crofts | Leo Crofts |
| Edward Crofts | Edward Crofts | Edward Crofts |
| Alvin Crofts | | |
| | Marden Pearson | Marden Pearson |
| | Dwain Pearson | Dwain Pearson |

8. Sanford v. Kunkel et al., 30 Utah 379, 85 P. 363, 1012 (1906).

It will be noted that of the five brothers constituting the J. E. Crofts & Sons partnership, four were also partners in the firm of Crofts-Pearson Industries. The two Pearsons were brothers. The members of the Crofts-Pearson Industries owned all of the stock of the defendant corporation.

In this case the Pearson brothers and all of the Croft brothers in J. E. Crofts & Sons partnership except Alvin Crofts, acting through the defendant corporation, made improvements upon the plant of the defendant corporation and spent some $24,000 of the defendant's money in doing so.

For 20 years the plant of the defendant corporation has been located in its present position. The defendant bought all of the lumber sawed by the two partnerships and sold the same. It kiln dried such of the lumber as it chose to dry and sold the rest of the lumber as green lumber. No rent has ever been paid by the corporation and none has ever been requested by either of the partnerships. The defendant corporation and Crofts-Pearson Industries share a common office and have a common office employee.

I cannot conceive of a court permitting either or both of the partnerships to say to the defendant corporation, "You have no interest in this land. Get off"; and this is especially so in view of the fact that it was the members of the partnership who spent the defendant's money in making the improvements.

CALLISTER, Justice (dissenting).

By means of adroit legalistic legerdemain, the majority opinion has caused the words "owner of any interest in land" to disappear completely from the statute. By nonreference thereto, it conceals the trial court's findings of fact, conclusions of law and scholarly memorandum decision.

The trial court, in its memorandum decision, observed that there was but one issue to be determined, namely, "Was the defendant the owner of any interest in the land upon which plaintiff's equipment was installed?" It opined that the beneficiary of the improvement need not be the owner of a fee title but must *own an interest in the land*, a lease being sufficient.[1] The court continued by stating that the word "interest" in common parlance in connection with land includes all varieties of titles and rights and comprehends estates in fee, for life, and for years; mortgages, liens, easements, and attachments, and every kind of claim on land which can form the basis of a property right.

The court stated that it was well settled that one relying on a statute creating a lia-

---

1. The majority opinion relies heavily upon Metals Manufacturing Co. v. Bank of Commerce, 16 Utah 2d 74, 395 P.2d 914 (1964), which involved a situation where-in the defendant bank had a 10-year lease and, therefore, is distinguishable from the instant case and has no relevancy or bearing upon it.

bility or enforcing a new remedy, not known to the common law, must conform strictly to statutory requirements. Plaintiff had a duty to determine the interest possessed by a purported owner before it delivered the material. Plaintiff insists that the contractor and supplier had the right to expect and believe that defendant was the owner of or the owner of an interest in the land. There was no testimony that the contractor or supplier ever made any inquiry concerning ownership or interest; the record was equally silent concerning any representations of ownership by the defendant.

As to the facts, the trial court found that:

(a) The land upon which the kiln was constructed was owned by either one of two partnerships, which one was not determined.

(b) Defendant did not own any *interest* in either tract of land upon which the kiln may have been constructed and did not have either a written or verbal authorization or permission of any of the partners of either partnership to construct the kiln upon the site.

(c) The owners of the land received no benefit from installation of the kiln upon their property.

(d) Defendant had no *interest* in the land either in fee or under any leasehold estate but held, if anything, only a *license at sufferance* of the true owners, having been permitted to go upon the land without the objection of the true owners thereof.

Based upon the foregoing findings of fact, amply supported by the evidence, the legal question to be resolved is whether a licensee is "the owner of any interest in land" as prescribed in 14–2–1, U.C.A.1953. In the opinion of the trial court, with which I am in agreement, it is not.

In the jungle of the semantics of the property law a license is not an "interest" in property. It is a mere privilege or permission. * * *[2]

* * * * * *

* * * A license is to be distinguished from other property concepts in that it creates no legal right in the land itself. It is thus differentiated from freehold interests, leases, easements and corporeal hereditaments. * * *

A licensee differs from a lessee in that the latter has a possessory interest. There is no right of possession in the licensee. There is a plain difference between a license and a lease. * * * A lease differs from a license in that a lease of land passes an interest in the land, requires a writing to comply with the Statute of Frauds, although not always a seal, and transfers possession, while a license merely excuses acts done

2. 1A Thompson on Real Property (1964 Replacement) § 217, p. 194.

by one on land in possession of another that without the license would be a trespass, conveys, no interest in the land, and may be contracted for or given orally. A tenancy implies some interest in the land leased, while a license gives only a temporary privilege in the use of the property, usually revocable at the pleasure of the licensor. * * *[3]

Plaintiff concedes that had this action been brought to foreclose a mechanic's lien under 38–1–3, U.C.A.1953, and defendant did not own an interest in the land, then it would have no remedy. It contends that the court should render a general judgment in this personal action, since it would not affect the land of the two partnerships, and no one but the defendant would be obligated to pay the judgment.[4]

■ Although plaintiff's contention appears reasonable, it is contrary to the express provisions of 14–2–1, 14–2–2, U.C.A. 1953.

Because of the common purpose of these lien and contractor bond statutes, and their practically identical language, adjudications as to what is lienable under the former are helpful in determining the proper application of the latter.[5]

Therefore, the law concerning mechanic's liens is relevant to the instant action.

Under mechanic's lien statutes it has been held that no lien will arise for materials furnished or labor performed in the construction of improvements upon the land under a contract with a licensee, who has no authority, express or implied, to bind the licensor.[6]

I am in agreement with the majority's statement that this court has allowed a materialmen's lien to attach to interests less than fee simple, such as leasehold estates, and equitable interests. However, its opinion fails to cite any case dealing with a mere license such as the trial court found to exist in this case. Although not involving a license situation, this court in Sanford v. Kunkel[7] (cited by the majority as authority for its opinion) had this to say:

* * * The cases cited by respondents do not support such a doctrine. They are to the effect that where a building is constructed on ground not owned by the person with whom the contract of construction was entered into and for whom the building was erected no lien

---

3. Ibid. § 223, pp. 214–216.
4. Adopted by the majority opinion.
5. King Bros., Inc., v. Utah Dry Kiln Company, 13 Utah 2d 339, 374 P.2d 254 (1962).
6. Boise Payette Lumber Co. v. Bickel, 42 Idaho 245, 245 P. 92, 45 A.L.R. 575

(1926); Hoag v. Hay, 103 Iowa 291, 72 N.W. 525 (1897); Westport Lumber Co. v. Harris, 131 Mo.App. 94, 110 S.W. 609 (1908); 57 C.J.S. Mechanics' Liens § 66, p. 566; 36 Am.Jur. 83; 45 A.L.R. 581.
7. 30 Utah 379, 85 P. 363, 1012 (1906).

attached to either the land or the building, on *the theory that the lien law contemplated that a party for whom a building is erected and against whom and whose interest the lien is to be enforced, shall have some estate or interest in the land upon which the building is erected.* * * * These cases do not avail respondents, because the facts upon which they are founded do not here exist. Appellants made their contracts with and performed labor and furnished materials for Kunkel [respondent], *the owner of the land* upon which the building in question was constructed. The *case at bar* is, therefore *unlike one where a building is constructed for one on ground not owned by him and where no lien at all existed and attached.* (Emphasis added.)

■ Section 14–2–1, 14–2–2, U.C.A.1953, specifies that this statutory remedy is available solely against "the owner of any interest in the land." The trial court found the defendant was a licensee.[8] A licensee has no title or interest in the land; and, therefore, the trial court properly dismissed the action against defendant for plaintiff's failure to prove the statutory elements of its cause of action.

I further dissent from the concurring opinion of Justice Ellett for the reason that the issue which he has raised was neither pleaded nor proved in the instant action.

8. The majority opinion ignores its prior pronouncements relating to the respect

The judgment of the trial court should be affirmed.

HENRIOD, J., concurs in the dissenting opinion of CALLISTER, J.

which this court must give to a trial court's findings of fact.